365 So.2d 266 (1978)
Robert L. MYERS et al., Plaintiffs-Appellants,
v.
Lovelace THIBEAUX et al., Defendants-Appellees.
No. 6636.
Court of Appeal of Louisiana, Third Circuit.
October 13, 1978.
Dissenting Opinion October 18, 1978.
Rehearing Denied November 28, 1978.
*267 Dean, Lomenick & Seemann, P. C., by G. Frederick Seemann, Opelousas, for plaintiffs-appellants.
Lovelace Thibeaux, in pro. per.
Gist, Methvin & Trimble by DeWitt T. Methvin, Jr., Alexandria, for defendant-appellee.
Before WATSON, GUIDRY and FORET, JJ.
FORET, Judge.
The sole issue presented on this appeal is whether the rejection of uninsured motorist coverage by Robert L. Myers, Sr. in 1962 constitutes a sufficient rejection of uninsured motorist coverage for a subsequent 1973 policy issued by State Farm Mutual Automobile Insurance Company (hereinafter referred to as State Farm) to Mr. Myers wherein he insured a different automobile with different coverage limits.
Since 1962, State Farm has continuously issued automobile insurance covering vehicles owned by Robert L. Myers, Sr. It is undisputed that Mr. Myers rejected uninsured motorist coverage under his 1962 policy issued by State Farm. In 1973, State Farm issued an automobile insurance policy to Mr. Myers which insured a different automobile with different coverage than previous policies issued to Mr. Myers. Although the 1973 policy does not include uninsured motorist coverage by its terms, appellants argued that such coverage should be read into the policy because Mr. Myers was not given the opportunity to reject uninsured motorist coverage therein. See: Act 494 of 1975[1]. No questions are presented on this appeal concerning liability or damages with respect to the uninsured defendant, Lovelace Thibeaux. Appellants contend that State Farm should be held liable in solido with Thibeaux.
Act 494 of 1975 amending LSA-R.S. 22:1406 provides in part:
"D. The following provisions shall govern the issuance of uninsured motorist coverage in this state:
(1) * * *
(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state . . . unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy . . . provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or select lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer." (emphasis added.)
When the renewal or supplemental policy was issued in 1973, LSA-R.S. 22:1406 D(1) provided in part:
". . . provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage . . ."
Appellants argue that there is no rational connection between the policy issued in 1962 and the one issued in 1973, and that uninsured motorist coverage should have been offered to the insured each time that a policy was applied for or renewed. Appellants base this contention on the fact that prior to Act 494 of 1975 the statute did not *268 mention prior rejection by the insured as having a continuing effect on policies subsequently issued in a "renewal or substitute policy where the named insured ha[d] rejected the coverage . . . in connection with a policy previously issued to him by the same insurer". We find no merit in this argument under the facts of this case.
The record indicates that the insurance in effect on the date of the accident, i. e., November 15, 1975, was "delivered or issued for delivery" on October 23, 1975, after the effective date of Act 494 of 1975, which amended LSA-R.S. 22:1406 D by adding the sentence above quoted. The initial policy was issued in the year 1962 and in connection with the issuance of that policy, Myers rejected uninsured motorist coverage. This policy was issued only for a period of six months and provided for a renewal every six months as the required renewal premium was paid. In 1973, the substitute policy was issued because Myers changed cars and required slightly different limits and coverage. This coverage, like the 1962 policy, was renewed every six months, the last renewal occurring on October 23, 1975, after the amendment to LSA-R.S. 22:1406 D(1) and prior to the accident on November 15, 1975. In our view, it cannot be seriously questioned that the insurance delivered by State Farm on October 23, 1975, was but a renewal and/or substitute for the insurance initially issued to Myers in 1962.
Since Myers initially rejected uninsured motorist coverage in 1962, and since the last insurance delivered to him by State Farm (a renewal or substitute for the coverage provided in 1962) was on October 23, 1975, we conclude that the very terms of the uninsured motorist statute as amended, and as quoted above, bar his recovery.
For the reasons assigned, the judgment of the trial court is affirmed at appellants' costs.
AFFIRMED.
WATSON, J., dissents and assigns reasons.
WATSON, Judge, dissenting:
Contrary to what the majority says, the insurance policy in question was issued in 1973, not 1975. On the erroneous premise that it was issued in 1975, the incorrect conclusion is drawn that there is no UMI coverage.
The essential facts are as follows: Myers, Sr. bought an insurance policy in 1962, from State Farm. State Farm claims that he executed a rejection of uninsured motorist coverage in 1962, although the rejection slip does not appear in the record. Be that as it may, State Farm issued a different insurance policy to Myers in 1973, which covered a different automobile and which bore a different policy number.
An accident occurred to Myers, Jr. in 1975, and he claims uninsured motorist benefits.
In 1973, the applicable law in effect was Act 137 of 1972, which provided that an automobile liability insurance policy could not be issued without uninsured motorist coverage except, "That the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage."
Under the language of the 1973 Act, (the law in effect at the time Myers, Sr. bought his present policy) it would have been necessary for Myers, Sr., at that time, to reject uninsured motorist coverage. The 1962 rejection was not effective in 1973.
In 1974, the law was enacted again as Act 154 of 1974, which left the rejection provision of LSA-R.S. 22:1406 D(1) the same as that in 1972. But, in 1975, a sentence was added at the end of the paragraph which says:
"Such coverage need not be provided in, or supplemental to, a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the named insurer."
Thus, the inquiry is whether the rejection signed in 1962, which was ineffective in 1973, became effective in 1975.
*269 On two bases I disagree with the majority's conclusion that the rejection was effective in 1975. First, the policy was not a renewal or substitute. It covered a different car with different coverage and a new number. Second, the 1975 Act made a substantive change in the law and is prospective, not retrospective in application.
I respectfully dissent.
NOTES
[1] Act 494 of 1975, amending LSA-R.S. 22:1406, was effective on September 12, 1975, two months before the subject accident which occurred on November 15, 1975.