373 So.2d 1335 (1979)
Donald A. BREAUX et al.
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY et al.
No. 12154.
Court of Appeal of Louisiana, First Circuit.
July 12, 1979.
*1336 Michael J. Samanie, Houma, counsel for plaintiffs and appellees.
Felix R. Weill, Baton Rouge, Keith Whipple, Houma, counsel for defendant and appellee.
David E. Walle, New Orleans, counsel for defendant and third party plaintiffs-appellants.
Before LANDRY, COVINGTON and PONDER, JJ.
LANDRY, Judge.
On remand from the Supreme Court, Breaux v. Government Employees Insurance Company, 369 So.2d 1335 (La.1979), we are mandated to determine the limits of uninsured motorist coverage pursuant to a policy issued by defendant Traders and General Insurance Company (Traders) to plaintiffs. Donald A. and Julia A. Breaux, whose daughter died of injuries received while riding as guest passenger in an automobile insured by Government Employees Insurance Company (GEICO). Plaintiffs settled their claims against GEICO for $39,700.00 and released GEICO from further liability.
Traders' policy provided uninsured motorist coverage for two vehicles owned by plaintiffs, neither of which was involved in the accident and on both of which separate premiums were paid. Traders' policy provided liability coverage in limits of $10,000 per person, $20,000 for each accident and uninsured motorist coverage in limits of $5,000 per person and $10,000 per accident. Despite the uninsured motorist coverage limits, the trial court rendered judgment for plaintiffs against Traders in the sum of $76,904.65, subject to credit for the amount plaintiffs received from GEICO. Thus, plaintiffs were awarded $37,204.65.
The trial court found that because plaintiffs did not expressly reject uninsured motorist coverage or select such coverage lower than the liability coverage of the Traders policy, La.R.S. 22:1406(D)(1), as amended by Act 154 of 1974, required plaintiffs' uninsured motorist coverage to be raised to the limits of their liability coverage. So finding, the trial court held plaintiffs' uninsured motorist coverage to be in limits of $10,000-$20,000. The trial court also held that plaintiffs were entitled to "stack" their uninsured motorist coverage because two vehicles were insured and separate premiums charged for each automobile, thus increasing the uninsured motorist protection to $20,000-$40,000. The trial court also held that each plaintiff was entitled to uninsured motorist protection in the sum of $20,000 under Traders' policy, and on this basis awarded plaintiffs $37,204.65.
We reversed the judgment against Traders upon finding Traders was entitled to a *1337 credit of $39,700 because of the uninsured motorist coverage provided by the GEICO policy which was not pursued by plaintiffs. Breaux v. Government Employees Insurance Company, 364 So.2d 158 (La.App. 1st Cir. 1978). So finding, we did not reach the question of Traders' exposure under its uninsured motorist coverage.
The Supreme Court granted certiorari, Breaux v. Government Employees Insurance Company, 365 So.2d 246 (La.1978), and reversed our decision upon finding that the GEICO policy did not provide uninsured motorist coverage available to plaintiffs.
Two issues are presented. First, whether the failure of Traders' agent to offer plaintiffs uninsured motorist coverage equal to the limits of liability coverage in Traders' policy, statutorily increases the uninsured motorist coverage ($5,000-$10,000) to the liability coverage ($10,000-$20,000) pursuant to La.R.S. 22:1406(D)(1), as amended by Act 154 of 1974. Second, whether plaintiffs may stack their uninsured motorist coverage because two vehicles were insured, resulting in uninsured motorist coverage of $20,000 per person and $40,000 for each accident.
Traders' policy had an effective date of March 9, 1975. The question of whether Traders' uninsured motorist coverage is increased to the liability limits must be determined in the light of the provisions of La.R.S. 22:1406(D)(1) as amended by Act 154 of 1974, effective August 1, 1974. Williams v. State Farm Mutual Automobile Insurance Company, 349 So.2d 1275 (La.App. 1st Cir. 1977).
The applicable statute pertinently provides:
"D. (1) No automobile liability insurance covering liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage or selects lower limits."
The trial court agreed with plaintiffs' contention that the statute requires the insurer to advise the insured of the insured's entitlement to increased uninsured motorist coverage and, if the insurer fails to do so, the uninsured motorist coverage is per se increased to the liability protection limits even though the policy contains lower limits of uninsured motorist protection.
Conversely, Traders maintains that the statute was complied with because the policy contained uninsured motorist coverage although in amounts less than liability coverage. In so arguing, Traders relies on Myers v. Thibeaux, 365 So.2d 266 (La.App. 3d Cir. 1978), wherein the court considered the following provision, added to La.R.S. 22:1406(D)(1)(a) by Act 494 of 1975, concerning uninsured motorist coverage:
"... Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer."
Myers, above, involved a policy issued in 1973 and renewed in 1975, which the court found to be a continuation of the original policy obtained by plaintiffs in 1962. Plaintiffs had initially rejected uninsured motorist coverage in 1962, and no such coverage was ever provided up to the time of the accident sued upon in 1975. Applying the pertinent statute, as amended by Act 494 of 1975, the court held that the insured's initial rejection of uninsured motorist coverage in 1962 was effective as to the policy issued in 1973 and renewed in 1975, and, consequently, no uninsured motorist coverage was provided under the renewal policy.
*1338 We distinguish Myers, above, in two respects. First, although plaintiffs herein initially rejected uninsured motorist coverage under the policy effective March 9, 1969, to March 9, 1970, the policy commencing March 9, 1970, provided such coverage. We hold that the initial rejection of coverage was vitiated by the subsequent inclusion of uninsured motorist coverage in the 1970 renewal. Second, we note that Act 494 of 1975, relied upon by the majority in Myers, above, has an effective date of September 12, 1975, which is six months subsequent to issuance (renewal) of the policy with which we are concerned here. In Myers, above, the issuance (renewal) involved occurred after the effective date of Act 494 of 1975.
In the instant case, the initial policy was issued to plaintiffs effective March 9, 1965. It provided $5,000-$10,000 liability coverage and no uninsured motorist protection. Without discussion with plaintiffs, the issuing agent added uninsured motorist coverage to the policy in 1970. The agent did not recall the circumstances surrounding this addition of coverage. Mr. Breaux testified he reviewed the policy premium statements forwarded by the agent, assumed the policy to be in order and paid the premium. At this juncture liability and uninsured motorist coverages were identical. In 1974, liability coverage was increased to $10,000-$20,000, substantially the same procedure being followed. Uninsured motorist coverage, however, remained at $5,000-$10,000 through the date of subject accident on March 3, 1976. The agent concedes he never communicated with plaintiffs regarding the effect of Act 154 of 1974, effective August 1, 1974.
In Anderson v. West, 354 So.2d 636 (La. App. 1st Cir. 1977), we discussed in detail the historical development of our uninsured motorist statute and in Legendre v. Rodrigue, 358 So.2d 665 (La.App. 1st Cir. 1978), we interpreted Act 137 of 1972, which provided:
"D. (1)(b) Any insurer delivering or issuing an automobile liability insurance policy referred to herein, shall also permit the insured, at his request, to increase the coverage applicable to uninsured motor vehicles provided for herein to any amount not in excess of the limits of the automobile liability insurance carried by such insured." (Emphasis added)
In Legendre, above, the trial court held that pursuant to Act 137 of 1972, the insured must be informed of the option to increase uninsured motorist coverage, and when the agent fails to do so the policy must be judicially reformed to increase the uninsured motorist coverage. We reversed the trial court in Legendre, above, and construed the 1972 amendment to require the insurer to provide extra uninsured motorist protection only at the request of the insured.
In Hayden v. Torrence, 355 So.2d 1362 (La.App. 1st Cir. 1978), we noted that Act 137 of 1972 allowed the insured to initiate an increase of uninsured motorist coverage to any amount not in excess of his liability coverage and that pursuant to Act 154 of 1974, the insurer was obligated to include uninsured motorist coverage at the liability level unless the insured rejected such coverage or selected lower limits of uninsured motorist protection.
Because Act 154 of 1974 mandates uninsured motorist coverage at liability limits except when the named insured rejects such coverage or opts for lower limits, we are of the view that the only way an insured can exercise such an option is when he is informed of his option privilege by the insurer. It is conceded that no such information was communicated to plaintiffs herein. Since plaintiffs did not opt to reject equal coverage or select lower limits of uninsured motorist protection, the law mandates such coverage to be provided in equal amounts. We hold, therefore, that the uninsured motorist coverage provided in subject policy is in limits of $10,000-$20,000.
Plaintiffs argue that because two vehicles were insured under Traders' policy and separate premiums were paid for each coverage, they are entitled to stack the uninsured motorist coverage pursuant to Barbin v. U. S. F. & G. Co., 315 So.2d 754 (La.1975) and Deane v. McGee, 261 La. 686, 260 So.2d 669 (1972). On this basis, it is claimed plaintiffs should recover $20,000 per person *1339 and $40,000 per accident under this coverage.
Traders, however, invokes Gulf Oil Corporation v. State Mineral Board, 317 So.2d 576 (La.1975), in support of the proposition that La.R.S. 22:1406(D)(1), as amended by Act 623 of 1977, is interpretative legislation by which the legislature evidenced its intent to prohibit stacking of uninsured motorist coverage through the passage of Act 154 of 1974. It suffices to say that this argument was disposed of adversely to Traders' position by this court in Anderson v. West, above.
We conclude that plaintiffs are entitled to stack the uninsured motorist coverage in this instance.
The judgment against Traders awarding plaintiffs $37,204.65 is amended to reduce said judgment to $20,000, costs of this appeal to be shared one-half by plaintiffs and one-half by Traders.
AMENDED AND RENDERED.