EDWARDS, Judge,
dissenting.
On July 13, 1978, plaintiff, Margaret B. Roberts, was injured in an automobile accident caused by the negligence of Neil B. Burris, an uninsured motorist. Suit was brought against Burris and American International Insurance Company (A.I.U.), the uninsured motorist carrier of Mr. and Mrs. Roberts. Following trial, Burris was cast for $14,000 in damages plus interest and costs. The award against A.I.U. was limited to $5,000 because the trial court found that, despite carrying $25,000 in bodily injury liability coverage, plaintiff had chosen to carry only $5,000 of uninsured motorist insurance. Plaintiffs appealed.
In affirming the trial court judgment, an affirmation which effectively limits Mrs. Roberts’ recovery to some $9,000 less than that actually awarded, the majority has both misconstrued the statutory provisions relating to uninsured motorist coverage and chosen to ignore the jurisprudence, albeit imprecise at times, interpreting those provisions.
Uninsured motorist coverage, by nature wholly statutory, reached its present state only after years of legislative meandering. Despite seemingly innumerable changes in particular definitions, evidentiary presumptions and procedural mechanics, one principle has remained steadfast — that insurance shall be made available to all drivers as a means of compensation in the event they are injured by the negligent vehicular operation of other drivers, both uninsured and underinsured.
Act 137 of 1972,[1] effective January 1, 1973, required all liability policies issued or delivered in Louisiana to provide uninsured motorist coverage in an amount not less than that required by the Motor Vehicle Safety Responsibility Law unless “any in *379 sured named in the policy shall reject the coverage.”
Act 154 of 1974,[2] effective July 31, 1974, required the coverage provided to equal the limits of bodily injury liability carried unless “any insured named in the policy shall reject the coverage or selects lower limits.”
Act 494 of 1975,[3] effective September 12, 1975, retained the prior coverage requirement but provided that such “coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer.”
Act 438 of 1977,[4] effective September 9, 1977, continued the same coverage provisions but required that any rejection or lower limit selection by the insured be in writing. The Act further provided that when any such valid rejection or selection was made, it would be conclusively presumed a part of the policy, even though not physically attached to same.
*380 In the present case, plaintiffs obtained $25,000 in bodily injury coverage and $5,000 in uninsured motorist protection on June 6, 1974. On July 31, 1974, as a result of Act 154 of 1974, plaintiffs’ uninsured coverage was automatically increased to $25,000. On December 6, 1974, pursuant to Mr. Roberts’ oral request, UM coverage was deleted. On January 15, 1975, pursuant to another oral request, UM was added in the lower limit of $5,000 (in contrast to the bodily injury limit of $25,000). Nothing further passed between plaintiffs and A.I.U. and the policy was renewed every six months with the latest renewal dated May 2, 1978.
This case turns on two questions. First, were plaintiff’s oral requests of December 6, 1974, and January 15, 1975, sufficient to constitute a rejection and lower limit selection, respectively. Second, presuming the oral requests sufficient, were the rejection and lower limit selection operative as to policy renewals absent further communication from the insured. The trial court and a majority of this court answer both questions in the affirmative. I cannot agree.
Until Act 438 of 1977 mandated that rejection or lower limit selection of UM coverage be in writing, LSA-R.S. 22:1406 D, standing alone, required no specific mode of rejection or lower limit selection. However, the general insurance law, LSA-R.S. 22:628,[5] which controls in the absence of a particular rule, provided that, to be valid, any agreement in conflict with, modifying, or extending the coverage of an insurance policy must be in writing and physically attached to or incorporated in the policy by specific reference.
Clearly, to be valid, any rejection or lower limit selection prior to September 9,1977, must have been both in writing and attached to the policy or incorporated by specific reference. Because A.I.U. did not require plaintiffs to reduce the oral requests of December 6, 1974, and January 15, 1975, to writing and attach same to the policy, those requests cannot operate to relieve A.I.U. of the legal obligation imposed by Act 154 of 1974 to provide $25,000 in UM coverage, the amount equal to plaintiffs’ bodily injury liability provision.
LeBoyd v. Louisiana Transit Company, 375 So.2d 749 (La.App. 4th Cir. 1979), is directly in point. An insured whose policy was written under the strictures of Act 154 of 1974 attempted to orally reject UM coverage. The appellate court, holding that R.S. 22:628 applied “because rejection conflicted with the coverage” required by R.S. 22:1406 D, found the oral rejection ineffective.
The majority, noting that Act 494 of 1975 was not yet applicable to plaintiff’s policy in LeBoyd, nevertheless concludes “We therefore find LeBoyd also to be inapplicable.” I am mystified how the majority can, by facile reliance on an irrelevant fact, completely ignore jurisprudence contrary to its position.
Walker v. Coleman, 367 So.2d 395 (La. App. 2nd Cir. 1979), writ denied 369 So.2d 1365 (La.1979), also involved the applicability of R.S. 22:628. In Walker, the UM carrier’s motion for summary judgment was sustained on the ground that plaintiff had orally rejected UM coverage. In reversing, the court of appeal stated “We therefore hold that proof of a waiver of such statutorily mandated coverage must be in writing to be effective.” The court also found that “there has not been a sufficient showing in the instant case of an absence of a genuine issue of material fact ... to sustain a motion for summary judgment.”
*381 Seeking to evade the clear holding of Walker, the majority seizes on the second ground for reversal and opines that that “decision could have rested on the insufficiency of proof of absence of genuine issue of material fact(.)” Fatal to this analysis is the fact that the court in Walker provided two valid reasons for reversal. That the first ground was a clearly stated and correct interpretation of the law cannot justify the majority’s plainly erroneous conclusion that said ground constituted superfluous dictum.
The majority further seeks to discredit Walker as authority by citing Turner v. Allstate Insurance Company, 368 So.2d 797 (La.App. 2nd Cir. 1979), a later case decided by the same panel of judges as Walker. In Turner, the court held that R.S. 22:628 did not apply because Act 494 of 1975 had amended R.S. 22:1406 D to allow past rejection to operate automatically in the future. To that extent only, R.S. 22:628 was held not to control.[6] The question of written vs. oral rejection or lower limit selection was not before the Turner court and therefore the majority cannot logically vouchsafe Turner as an erosion of Walker.
Even if I were to assume that the useless oral requests of plaintiff were valid, I could not conclude that the rejection and subsequent lower limit selection operated prospectively on a continuing basis.
Plaintiff’s oral requests of December 6, 1974, and January 15,1975, to add $5,000 of UM coverage could not have remained effective on June 6,1975, when the policy was next renewed since Act 494 of 1975 was not yet effective. Furthermore, passage of Act 494 did not resurrect and make effective the earlier rejection and lower limit selection, even presuming their validity, since their lifelessness on June 6, 1975, was beyond doubt.
Act 494 of 1975 made a substantive change in the statutory law of uninsured motorist coverage. Prior to September 12, 1975, an insured would receive equal amounts of bodily injury liability and UM coverage unless he rejected same or selected lower limits. No statute permitted even a valid rejection or lower limit selection to be effective at the next policy renewal. Therefore, to derogate from the substantive right of UM coverage, a new and valid rejection or lower limit selection was required at each policy renewal. Act 494 permitted continuing rejection or lower limit selection effective September 12, 1975, but, as substantive law, can only be applied prospectively.[7] Thus, for any rejection or lower limit selection to be continuously effective, that rejection or lower limit selection must have been valid and made no earlier than September 12, 1975.
Act 438 of 1977, requiring written rejections or lower limit selections and abrogating the attachment or reference requirements of R.S. 22:628, both clarifies the law and changes it. The passage of Act 438 shows that what was formerly required by general insurance law is now either required or dispensed with by particular statute.
Based on a review of the law and jurisprudence, I am certain that no oral rejection or lower limit selection of UM coverage is or has been valid. The second and fourth circuits so hold. I am likewise sure that no valid rejection or lower limit selection made prior to September 12, 1975, can be effective after that date.
Because the majority has chosen to ignore jurisprudence clearly on point, a con *382 flict has been created between the second and fourth circuits on one hand and the first circuit on the other. Unequivocally believing the majority’s position to be wrong, I must dissent.

. Act 137 of 1972 amended and reenacted LSA-R.S. 22:1406 D(l) to read:
(a) “No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits described in the Motor Vehicle Safety Responsibility Law of Louisiana, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage.”
(b) “Any insurer delivering or issuing an automobile liability insurance policy referred to herein, shall also permit the insured, at his request, to increase the coverage applicable to uninsured motor vehicles provided for herein to any amount not in excess of the limits of the automobile liability insurance carried by such insured.”

. Act 154 of 1974 amended and reenacted R.S. 22:1406 D(l) to read:
“No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage or selects lower limits.”

. Act 494 of 1975 amended and reenacted R.S. 22:1406 D(l) to read:
(a) “No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer.”
(b) “Any insurer delivering or issuing an automobile liability insurance policy referred to herein, shall also permit the insured, at his request, to increase the coverage applicable to uninsured motor vehicles provided for herein to any amount not in excess of the limits of the automobile liability insurance carried by such insured.”

.Act 438 of 1977 amended and reenacted R.S. 22:1406 D(l)(a) to read:
“No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.”

. LSA-R.S. 22:628, prior to July 10, 1979, provided:
“No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless it is in writing and physically made a part of the policy or other written evidence of insurance, or it is incorporated in the policy or other written evidence of insurance by specific reference to another policy or written evidence of insurance. This Section shall not apply to contracts as provided in Part XV of this Chapter.
The provisions of this Section shall apply where a policy or other written evidence of insurance is coupled by specific reference with another policy or written evidence of insurance in existence as of the effective date hereof or issued thereafter.”

. In Turner, the insured rejected UM in writing on June 17, 1975. Act 494 of 1975 became effective on September 12, 1975. Nevertheless, the Turner court construed the Act as permitting plaintiffs prior written rejection to be operative as a continuing rejection once Act 494 of 1975 became effective. I do not agree with the decision in Turner for reasons stated below but here merely note that the case has no bearing on Walker.

. It is true that Myers v. Thibeaux, 365 So.2d 266 (La.App. 3rd Cir. 1978), and Turner v. Allstate Insurance Company, supra, were decided so as to effectively declare Act 494 of 1975 procedural. I agree with the second reason for dissent given by Judge Watson in Myers (that the statute is substantive and can only be applied prospectively) and flatly state that both Myers and Turner were wrongly decided.