Nancy L. GOODE, Plaintiff-Appellee,

v.

Kenneth H. DAUGHTERY, Defendant,

State Automobile Mutual Insurance
Company, Appellant.

Court of Appeals of Tennessee,
Eastern Section.

Jan. 18, 1985.

Permission to Appeal Denied by
Supreme Court April 1, 1985.

L. Hale Hamilton, with Spears, Moore, Rebman & Williams, Chattanooga, for appellant.

Marvin Berke, with Berke, Berke & Berke, Chattanooga, for plaintiff-appellee.

## OPINION

SANDERS, Judge.

In this wrongful death action the decedent's uninsured motorist carrier has appealed from a judgment of the circuit court which reformed the policy of insurance to provide uninsured motorist coverage in an amount equal to its liability coverage ($50,000).

In March, 1980, Plaintiff-Appellee, Nancy L. Goode, wife of Waldon A. Goode, now deceased, applied to Defendant-Appellant State Automobile Mutual Insurance Company, through its agent, James Wofford, for automobile insurance on a 1979 Chevrolet Chevette automobile. The automobile previously had been insured with J.C. Penney Casualty Insurance Company. The J.C. Penney policy had provided $50,000 liability coverage for each person, $100,000 liability coverage for each accident and $10,000 uninsured motorist coverage for each person, $20,000 uninsured motorist coverage for each accident. Upon Mrs. Goode's instructions, Defendant issued policy # FAR 3 610 877 with the identical $50,000/$100,000 liability and $10,000/$20,000 uninsured motorist coverage. The policy was issued in the name of Waldon A. Goode.

In September of the same year, Mrs. Goode again visited Mr. Wofford to apply for insurance on two other cars—a 1978 Chevrolet Caprice and a 1974 Volkswagon. These cars also previously had been insured with J.C. Penney, with the same limits as discussed above. Defendant issued a second policy, # BPA 1 195 912, in the name of Waldon A. Goode with the same $50,000/$100,000 liability and $10,000/$20,000 uninsured motorist coverage. In applying for this policy, Mrs. Goode executed Defendant's uninsured motorist option form and, by this form, requested reduced limits for uninsured motorist coverage in the amount of $10,000/$20,000. Mr. Goode continued to renew these policies semi-annually without changing the scope of coverage until his death on December 15, 1982.

Immediately prior to Mr. Goode's final renewal of policy # BPA 1 195 912 on September 2, 1982, Chapter 835 of the Public Acts of 1982 became effective. This bill amended Tenn.Code Ann. § 56-7-1201 to provide as follows:

"(a) Every automobile liability insurance policy delivered, issued for delivery or renewed in this state, covering liability arising out of the ownership, maintenance, or use of any motor vehicle designed for use primarily on public roads and registered or principally garaged in this state, shall include uninsured motorist coverage, subject to provisions filed with and approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.

"(1) The limits of such uninsured motorist coverage shall be equal to the bodily injury liability limits stated in the policy.

"(2) Provided, however, that any named insured may reject in writing such uninsured motorist coverage completely or select lower limits of such coverage but not less than the minimum coverage limits in § 55-12-107. Any document signed by the named insured or legal representative which initially rejects such coverage or selects lower limits shall be binding upon every insured to whom such policy applies and shall be conclu-

sively presumed to become a part of the policy or contract when issued or delivered, irrespective of whether physically attached thereto. Unless the named insured subsequently requests such coverage in writing, the rejected coverage need not be included in or supplemental to any continuation, renewal, reinstatement, or replacement of such policy, or the transfer of vehicles insured thereunder, where the named insured had rejected the coverage in connection with a policy previously issued by the same insurer; provided, however, that whenever a new application is submitted in connection with any renewal, reinstatement or replacement transaction the provisions of this section shall apply in the same manner as when a new policy is being issued."

With respect to the September 2, 1982, renewal policy, Defendant did not provide the Goodes with another uninsured motorist option form; instead, the policy was renewed as those before it with the same reduced limits for uninsured motorist coverage as approved originally by Mrs. Goode two years earlier.

Waldon A. Goode died on December 15, 1982, as a result of an accident with an uninsured motorist while driving the 1974 Volkswagon.

Plaintiff, Nancy Goode, the decedent's widow, instituted the present action in April, 1983, to recover for the wrongful death of her husband. Suit was brought against Kenneth H. Daughtery, the uninsured motorist, and process was also issued against the decedent's uninsured motorist carrier, State Automobile Mutual, pursuant to Tenn.Code Ann. § 56–7–1206.

Defendant filed its answer and, at the same time, filed a motion for tender, requesting the court for an order allowing it to pay into court $10,000, representing the uninsured motorist coverage it had afforded the decedent. The court accepted the tender, but stated that such acceptance did not release or discharge the insurance company from further amounts that might thereafter be determined to be owed.

The court, sitting without a jury, heard the case and awarded the Plaintiff a judgment against Daughtery of $370,000 for the pecuniary value of her husband's life and of $50,000 for punitive damage. The court took under advisement the uninsured motorist coverage issue.

Subsequently the court reformed the policy covering the Volkswagon automobile to provide uninsured motorist coverage in an amount equal to the liability coverage provided ($50,000). Judgment was entered against the insurance company for that amount.

From the order of the court reforming the policy, Defendant has appealed.

The trial court found two bases upon which it felt justified in reforming the policy on the 1974 Volkswagon.

First, the court decided the uninsured motorist option form signed by the Plaintiff was not binding upon her husband, the named insured. In so finding, the court relied upon the following decisions from Florida and from Alabama—*Protective National Insurance Co. v. McCall,* 310 So.2d 324 (Fla.Dist.Ct.App.1975); *Weathers v. Mission Insurance Co.,* 258 So.2d 277 (Fla. Dist.Ct.App.1972); and *State Farm Mutual Insurance Co. v. Martin,* 289 So.2d 606 (Ala.1974). In these cases, as in the case at bar, the wife of the named insured signed a document which either rejected or reduced the uninsured motorist coverage. The courts in each of these cases found such rejection to be ineffective because the named insured himself had not rejected the coverage.

We note, however, a critical difference between the language used in the Florida and Alabama statutes in effect at the time those cases were decided and the language used in our own statute. Ala.Code § 74(62a) (1958) provided that "the named insured shall have the right to reject such coverage...." Fla.Stat.Ann. § 627.0851 provided that "the [uninsured motorist] coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage...."

Under § 56–7–1201, however, "[a]ny document signed by the named insured *or legal representative* which initially rejects such coverage or selects lower limits shall be binding upon every insured to whom such policy applies...." (Emphasis ours.)

The question thus resolves itself into whether or not a wife can act in the capacity of a legal representative for her husband, and, if so, whether or not Mrs. Goode so acted in this case. In this regard, it has been stated generally that

> "[u]nder modern rules, there is no doubt that a married person may be authorized to act for the other spouse, but authority in this connection will not be implied from the marital relation. The husband may, however, at common law and under statute, make his wife his agent and be bound by her acts as such. The agency relationship in such a case ordinarily rests on the same considerations as any other agency. She is his agent, and he is bound by her acts as his agent, only when her agency is express, implied, or ostensible." 41 Am.Jur.2d *Husband and Wife* § 241 (1968).

■ Under the facts of this case, we find that Mrs. Goode clearly acted as her husband's agent in applying for the insurance on her family's cars. There is no evidence that Mr. Goode, at any time, objected to her action in this regard. Moreover, even were it able to be said that she originally acted without her husband's authority, by renewing the policies year after year he would be held to have ratified her action. *See Campbell v. Miller,* 562 S.W.2d 827 (Tenn.App.1977); *Osborne Co. v. Baker,* 35 Tenn.App. 300, 245 S.W.2d 419 (1951). *See generally* 3 Am.Jur.2d *Agency* § 160 (1962). Mrs. Goode did not testify that she was without authority to act on her husband's behalf in applying for the insurance nor is there any evidence in the record to support such a conclusion. On the contrary, the record indicates Mrs. Goode had been handling all the transactions pertaining to automobile insurance for a long period of time. Finally, to suggest that Mrs. Goode at this point could

benefit by successfully asserting that she had acted without proper authority would be manifestly unjust.

■ We conclude the trial court erred in finding, as one of its bases for reforming the insurance policy, that the Plaintiff's execution of the uninsured motorist option form was not binding upon her husband, the named insured.

As a second basis for reforming the policy, the court held the Defendant had failed to comply with the requirements of Tenn. Code Ann. § 56–7–1201 (as amended by Chapter 835 of the Public Acts of 1982) by neglecting to furnish the Goodes with a new uninsured motorist option form for the September 2, 1982, renewal policy. In so holding, the court, by implication, found that the option form signed by Mrs. Goode in September, 1980, which established lower limits of uninsured motorist coverage, did not continue to function as a valid selection of lower limits for the September 2, 1982—March 2, 1983, policy renewal period.

As no Tennessee courts have had occasion to address this precise question, the trial court was forced to look to case law from other jurisdictions.

■ The courts of Louisiana have addressed this problem directly. However, to understand their decisions, it is first necessary to examine closely the provisions of the Louisiana uninsured motorist statute. Evidently, prior to Act 494 of 1975 (effective September 12, 1975), the applicable statutory language provided that:

> "No automobile liability insurance covering liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles be-

cause of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage or selects lower limits." La.Rev.Stat.Ann. § 22:1406(D)(1).

However, Act 494 of 1975 added the following provision to the statute quoted above:

"Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer."

With the above statutory framework in mind, we now turn to the decisions of the Louisiana courts in this area. In *LeBoyd v. Louisiana Transit Co.*, 375 So.2d 749 (La.App.1979), the plaintiff was injured while riding on one of the defendant's buses, which was struck by an uninsured automobile. In her suit against the bus company and its insurer, the sole issue was whether or not the insurance policy provided uninsured motorist coverage for the defendant, despite the latter's original written rejection of such coverage in 1967 and its subsequent oral rejections during renewals, most recently in 1974. The court first ruled that the oral rejections were invalid based upon the statute of frauds. *Id.* at 751. Then, noting that the renewal policy in effect at the time of the accident preceded Act 494 of 1975 and stating that the 1975 amendment could not be applied to the policy retroactively, the *LeBoyd* court ruled that a new written rejection in 1974 (at the time of the last renewal) was required to erase the mandatory uninsured motorist coverage read into the policy by law. *Id.*

In *Collins v. Employers Insurance of Wausau*, 402 So.2d 158 (La.App.1981), the court was confronted with a related question—whether or not Act 494 could be applied retroactively to affect uninsured motorist coverage for an accident occurring *after* the Act's effective date, even though

the renewal policy was issued *prior to* its effective date. In *Collins*, the original automobile policy had provided coverage from May 31, 1974, until May 31, 1975. Rejection of uninsured motorist coverage was made in writing at that time. Subsequently, a renewal policy was issued which provided coverage from May 31, 1975, until May 31, 1976. No rejection of uninsured motorist coverage was made in connection with the renewal policy. On September 12, 1975, Act 494 of 1975 became effective and provided that uninsured motorist coverage "need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer." On February 20, 1976, the accident in question occurred. The *Collins* court ruled that "it is the date of issuance of the policy which determines the applicable law, not the date of the accident or event triggering the cause of action." *Id.* at 160. As a result, the court decided that Act 494 could not be applied retroactively and found uninsured motorist coverage present. In explaining its interpretation of the law, the *Collins* court reasoned that:

"Prior to the effective date of Act 494 of 1975, UM coverage was statutorily read into a policy unless the insured specifically rejected it. After its effective date, such coverage may be lost if there has been a rejection in a policy previously issued by the same insurer." *Id.* at 159.

In accord with the reasoning set out above, is *Myers v. Thibeaux*, 365 So.2d 266 (La.App.1978). In *Myers* the plaintiff originally purchased insurance from State Farm Mutual Automobile Insurance Company in 1962. In his 1962 policy, the plaintiff rejected uninsured motorist coverage. Renewal policies were issued until 1973, when State Farm issued Mr. Myers a policy on a different automobile and with different coverage. Under the new limits, the plaintiff, although not given the opportunity again to reject uninsured motorist coverage, still was without such coverage. The plaintiff continued to renew this policy, the

final renewal being issued on October 23, 1975—*after* the effective date of Act 494 of 1975. Thereafter, on November 15, 1975, the plaintiff was involved in an accident with an uninsured motorist. The *Myers* court, finding the October 23, 1975, policy to be a "renewal and/or substitute" for the insurance initially issued to Myers in 1962, held that the plaintiff's original rejection of uninsured motorist coverage in 1962 remained effective (based upon the language of Act 494) and barred his recovery. *Id.* at 268.

In the case at bar, Tenn.Code Ann. § 56-7-1201, in part, provides that once the insured or legal representative rejects or selects lower limits of uninsured motorist coverage, "[u]nless the named insured subsequently requests such coverage in writing, the rejected coverage need not be included in or supplemental to any continuation, renewal, reinstatement, or replacement of such policy." As this statutory language was in effect at the time the Goodes renewed policy #BPA 1 195 912 (covering the Volkswagon) on September 2, 1982, we hold the Defendant was not obligated to provide them with a new uninsured motorist option form and the Plaintiff is bound by her selection, in 1980, of a lesser amount of uninsured motorist coverage.

Our decision today coincides with the approach taken by the Louisiana courts to date, although we note that under similar facts a Michigan appellate court reached a contrary result based on what it perceived to be the intent of its legislature. *See Oatis v. Dairyland Insurance Co.*, 174 N.W.2d 35 (Mich.App.1969). We believe the reasoning of the Louisiana courts more justly resolves the problem and more rationally interprets the provisions of our statute.

We conclude the trial court erred in reforming the policy to provide uninsured motorist coverage in an amount equal to the liability coverage offered.

The issues are found in favor of the Appellant. The judgment of the trial court is reversed and the case is remanded for the entry of a judgment in keeping with this opinion. The cost of this appeal is taxed to the Appellee.

GODDARD and FRANKS, JJ., concur.