A. Pat Kelly, M.D., et ux., et al., Complainants
and Appellants,

*v.*

Coleen S. Longmire et al., Defendants and Appellees.

435 S.W.2d 818.

(*Knoxville,* September Term, 1968.)

Opinion filed December 31, 1969.

THEARON F. CHANDLER, CHARLES K. TINDELL, and FRANCIS W. HEADMAN, Knoxville, for complainants and appellants.

WILLIAM P. O'NEIL. NORBERT J. SLOVIS, and JOE C. THOMASON, Knoxville, for defendants and appellees.

MR. JUSTICE HUMPHREYS delivered the opinion of the Court.

The Chancellor sustained the demurrers of the defendants Coleen S. Longmire and Raymond L. Longmire, and Claiborne, Lothrop & Sample, Inc., to the original bill of A. Pat Kelly, M.D., and wife, Betty Jo Kelly, and William J. Bryant, suing for specific performance of a contract in regard to land, or for damages for breach of contract. This action is assigned as error.

The salient facts are that the Longmires entered into a written contract with Claiborne, Lothrop & Sample, Inc., Realtors, on March 14, 1967, as follows:

"To: Claiborne, Lothrop & Sample, Inc. Realtors

Date: March 14, 1967

In consideration of your agreement to use your best efforts to find a purchaser and to list the property with the Multiple Listing Service of the Real Estate Board of Knoxville, I hereby grant you the sole and exclusive right to sell my property located 6th Civil District—Knox County, Tenn. on Dry Gap Rd., being 52 acres more or less with dwelling. This agency is given 3 months from date. The price is to be $38,500.00 upon the following terms: Cash I agree that if this property is sold by myself or anyone else during the above stated period of time, I will pay 5% sales commission of the total price at the time of closing from the proceeds of the sale.

You are hereby authorized to place a 'for sale' sign on the property and to remove all other signs.

Accepted:

s/Bob Galbreath          s/ Coleen S. Longmire

s/ R. D. Longmire."

Subsequently, the realty company entered into a sale contract with the complainants, which is in this language:

'This contract entered into this. 30th day of March, 1967, by and between Claiborne, Lothrop & Sample, Inc., Agent for the owner, R. D. Longmire and Coleen S. Longmire, of the first part, and William J. Bryant and A. Pat Kelly, of the second part.

## WITNESSETH

First Party hereby as agent sells to Second Party, and Second Party buys from First Party, subject to conditions hereinafter set out, the following described premises: Located in the 6th Civil District of Knox County, Tennessee, and being 52 acres more or less, fronting 540 feet on the East Side Dry Gap Pike. Said land is improved with frame dwelling, guest house, utility house, play house, tool shed and approximately 1 acre lake.

In consideration of $500.00 paid by Second Party as earnest money and as part of the purchase price, receipt of which is hereby acknowledged, this contract is made binding on both parties. When First Party shall offer to deliver to Second Party deed free and clear of all encumbrances, except as stated herein, being 1966 county taxes to be prorated as of date of closing, the Second Party shall, within 15 days thereafter, pay for the property $38,500.00 under the following terms: Assume VA loan at Home Federal of approximately $9,700.00. Balance to be cash subject to acquiring $24,000 loan at Founty City Bank. Sale to be closed in not less than 30 days and not more than 60 days. Possession date is June 1st, 1967 or sooner as directed by Seller.

Deed shall be made to A. Pat Kelly and William J. Bryant.

IT IS FURTHER MUTUALLY AGREED

1 First Party herein is not the owner of the property, but Agent. Hence this agreement is subject in all respects to approval and acceptance on the part of the owner.

2. If owner declines to accept the above offer, or approve terms as set out, then this trade is void, the agreement terminated, and the above $500.00, paid as earnest money and part purchase price, shall be refunded to Second Party.

3. If merchantable title cannot be given, title insurance secured or improvements be destroyed or damaged by fire or any other destructive force, earnest money will be refunded to Second Party.

4. If Second Party fails to carry out and perform the terms of this agreement within fifteen days after deed is presented, except for some good reason satisfactory and acceptable to First Party, he shall forfeit the above amount advanced as earnest money as liquidated damages for breach of contract. Agent may retain from such earnest money deposit an amount not greater than his total commission would have been if sale had been consummated, and residue, if any, to be paid to the owner.

CLAIBORNE, LOTHROP AND SAMPLE, INC.

By s/ Bob Galbreath
—————————————————
First Party

s/ A. Pat Kelly, M.D., William J. Bryant
—————————————————
Second Party

Approved and accepted

By ————————
    Owner"

———————

On April 24, 1967, the Realty Company returned the earnest money deposit of $500.00 to complainants and notified them that the defendant property owners had decided not to complete the sale.

Complainants aver that between March 30, 1967 and April 24, 1967, they had made arrangements to purchase the property, taking steps in this regard resulting in damage and loss if the defendant owners were not to be compelled to convey the property to them.

██ It is clear from the most casual perusal of the contract that complainants have no cause of action either for specific performance or damages against any of the defendants. According to the exclusive listing agency contract the property was to be sold for cash. This stipulation for cash payment is, of course, of essense, and the complainant property owners could not be bound so as to authorize specific performance or damages except upon compliance therewith. In other words, the agency of the realty company was expressly limited by this stipulation, so that only by compliance therewith could a contract be made which would be binding on the property owners.

█ Even if the provision in the listing contract granting the realty company "the sole and exclusive right to sell my property" could be construed as authorizing the defendant realty company to execute a sale contract which would bind the property owners to make a deed, still, the complainants could not recover because of the

stipulation that the realty company could only make a contract to sell for "cash".

But even without this particular "cash" stipulation, the complainants have no contract they can enforce against the property owners, for two reasons. First, it is the settled rule in Tennessee and in many other jurisdictions that a contract authorizing a real estate agent to sell a tract of land does not authorize the agent to make a contract of sale which would be binding on the owner, because such a contract must, in the absence of extraordinary provisions, be considered only a contract of employment of an agent. In Ruling Case Law, 4, Agency, p. 262, the following is found:

"The most serious disagreement in the decisions arises over the question as to whether or not such a broker may enter into a binding contract of sale in behalf of his principal where he is not in express terms authorized to do so. Since it is generally conceded that his only duty is to find a purchaser who is ready, willing and able to purchase upon the terms specified, the overwhelming weight of authority is to the effect that a broker has no right to conclude and execute a binding contract unless such power is expressly conferred by the use of unequivocal expressions to that effect; that the employment of a real estate broker, as such, or the mere listing of property with him, or the direct instruction to find a purchaser, or any communication from the owner to the broker with respect to the sale of land, will be regarded as giving the agent only the authority to find a purchaser; and that no wider power than that is necessarily indicated by the words 'to sell' or 'to make a sale', it being a matter of common understanding that even though one uses

such terms in soliciting the services of a real estate broker, nevertheless he reserves to himself the power to conclude the sale, unless there is an express provision to the contrary."

43 A.L.R.2d 1012

In an annotation in 43 A.L.R.2d 1015, certain general principles are stated:

"In American Law Institute Restatement, Agency, sec. 50, it is said that unless otherwise agreed, authority to make a contract is inferred from authority to conduct a transaction if the making of such a contract is incidental to the transaction, usually accompanies such a transaction, or is reasonably necessary to accomplish it, but in the Comment it is stated that authority to contract is not inferred from authority 'to solicit business' for the principal nor from authority 'to perform acts of service' for the principal. As subsequently shown, the conventional relationship between the owner of land and a broker who is engaged to sell it, without more, is regarded as an employment contract, or a contract for limited services to be performed for a specified consideration, and not one carrying authority to make a contract for the sale of the land which will bind the owner.

"It is a general rule that a real estate broker, under the ordinary contract of employment, has no power to execute a contract of sale in behalf of his principal."

On page 1022 of the annotation the following language is used:

"The fact that the agency created by an owner of land who employs a realty broker to sell it or find a pur-

chaser for it is made exclusive cannot be construed to carry implied authority to make a contract of sale which will be binding on the owner."

In support of this statement of the rule the annotator cites, among other cases, *McFadden v. Crisler*, 141 Tenn. 531, 213 S.W. 912.

Another statement of the general rule is found in 3 Am. Jur.2d, p. 520:

"AGENCY. 123 Authority to make a contract of sale * * * Stated in another way, mere authority to a real-estate agent 'to sell' does not carry with it implied power to make a contract for sale in behalf of his principal * * * A fortiori, it is clear that the employment of a real estate agent to find a puchaser for land does not impliedly authorize him to execute a contract of sale binding upon the owner."

Also see Restatement, Agency (2nd Ed.), Section 53, Comment b.

■ The second of the two reasons why there can be no specific performance or damages against the Longmires is that, even if it were to be assumed the Longmires' contract authorized the realty agency to make a binding contract of sale, the agreement entered into did not do this. This sale contract expressly stipulates that the real estate company is not the owner of the property, but agent, and that the contract is subject in all respects to approval and acceptance on the part of the owner. The contract further provides "if owner declines to accept the above offer, or approve terms as set out, then this trade is void, the agreement terminated, and the above $500.00, paid as earnest money and part purchase price, shall be refunded to Second Party."

The two stipulations referred to here speak for themselves and expressly make the contract of March 30, 1967 conditional, and impliedly characterize the contract for what it actually is, simply, an offer on the part of complainants, through the realty company, to buy the property on the terms set out in the document.

Complainants' case is not aided in any way by the allegation in their amended bill that "by their actions and conduct the Longmires ratified the contract with their agent, Mr. Sample." This allegation is not admitted by the demurrer as the question of ratification is necessarily one of fact measured by law. In other words, it is a mixed question of fact and law. So the bare allegation that by actions and conduct the contract was ratified is a mere conclusion of the pleader unless the acts and conduct said to amount to ratification are set forth in the amended bill; which has not been done.

So, since a demurrer only admits the truth of facts stated, not inferences from facts, or legal conclusions, *Crockett v. McLanahan,* 109 Tenn. 517, 72 S.W. 950, 61 L.R.A. 914; *H. T. Hackney Co. v. Robert E. Lee Hotel,* 156 Tenn. 243, 300 S.W. 1. *In re Eppinger's Estate,* 207 Tenn. 53, 336 S.W.2d 28; *Oman Construction Co. v. Tennessee Central Ry. Co.,* 212 Tenn. 556, 370 S.W.2d 563, this statement furnishes no basis for reversal.

What we have written also exonerates the realty company. It was, to the knowledge of complainants, acting exclusively as real estate agent of the Longmires. Conclusions to the contrary made in the amended bill cannot alter the case made by the plain, clear terms and provisions of the sale contract, under which it is expressly stipulated that the realty company is not the owner of

the property, but the agent of the Longmires, and that the agreement is subject in all respects to approval and acceptance on their part.

In addition, as we have already pointed out, the complainants expressly contracted with defendant realty company that if the Longmires declined to accept their offer or approve the terms as set out in the contract of March 30, 1967, the trade was to be void and the realty company's sole duty would be to refund the earnest money and part purchase price paid by the complainants.

Under the record before us there is no privity of contract between complainants and the realty company which would sustain specific performance, nor is there any privity of contract between these parties which would sustain an action for damages for fraudulent breach of contract.

The assignments of error are overruled and the judgment of the lower court is affirmed at the cost of appellants and their sureties.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.