IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 31, 2001

## RANDALL D. WEBBER, JR., ET AL. v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Circuit Court for Anderson County**
**Nos. 96LA0572, 97LA0112      Hon. James B. Scott, Judge**

---

**No. E1999-01909-SC-R11-CV - Filed July 3, 2001**

---

The sole issue in this appeal is whether the plaintiff ratified an insurance policy that provided uninsured motorist coverage in amounts less than the policy's coverage for bodily injury liability. The plaintiff argued in the trial court that he did not authorize the lesser limits of uninsured motorist coverage contained in the contract and that the court should construe the policy to provide for coverage equivalent to the liability provided for bodily injury. The trial court granted the defendant's motion for summary judgment, finding that the plaintiff had ratified, and was bound by, the coverage limits as expressed in the contract. On appeal, the Court of Appeals reversed, finding that an issue of fact existed as to whether the plaintiff intended to ratify the lower uninsured motorist coverage limits. We granted permission to appeal and hold that the trial court correctly granted summary judgment to the defendant. The judgment of the Court of Appeals is reversed.

**Tenn. R. App. P. 11 Application for Permission to Appeal; Judgment of the Court of Appeals Reversed; Case Remanded to Circuit Court**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., and FRANK F. DROWOTA, III, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

James S. McDonald, Knoxville, Tennessee, for the appellant, State Farm Mutual Automobile Insurance Company.

Roger L. Ridenour, Clinton, Tennessee, for the appellees, Randall D. Webber, Sr., and Lisa S. Webber, *individually, and as parents and natural guardians of,* Randall D. Webber, Jr.

**OPINION**

# FACTUAL BACKGROUND

On October 13, 1996, the plaintiff, Randall D. Webber, Sr.,was involved in an automobile accident with Nancy Seivers while driving on Highway 25 in Anderson County. Mr. Webber sustained serious injuries, and he later filed suit to recover damages arising out of this accident.[1] However, because Ms. Seivers was uninsured, the plaintiff sought payment from the defendant, State Farm Mutual Automobile Insurance Company, pursuant to his uninsured motorist ("UM") policy.

The contract for the plaintiff's automobile insurance policy with the defendant was originally executed on July 21, 1986. On that date, the plaintiff's mother-in-law, Ms. Brenda Southard, applied to have her daughter's then current automobile insurance policy reissued under her married name. At the same time, Ms. Southard requested coverage for the plaintiff's automobile, which was previously uninsured, in amounts identical to her daughter's policy. The liability limits for bodily injury under these policies were $50,000 per person and $100,000 per accident.

Importantly, however, Ms. Southard requested the statutory minimum amounts of UM coverage on both policies, a practice that she followed when insuring her own vehicles. Accordingly, instead of obtaining the standard UM coverage, which is equivalent to the policy's liability limits for bodily injury, she obtained lesser UM coverage in the amounts of $15,000 per person and $30,000 per accident for bodily injury. These policies have remained unaltered since 1986, except that by operation of law, the minimum statutory amounts of UM coverage have increased to $25,000 per person and $50,000 per accident. See Tenn. Code Ann. §§ 56-7-1201(a)(2); 55-12-107; 55-12-102.

After receiving the plaintiff's complaint seeking payment in the amount of $50,000 under his UM policy, the defendant filed an answer denying that it was contractually bound to pay the amount demanded. Rather, the defendant maintained that the plaintiff's recovery, if any, was limited to $25,000 per person and $50,000 per accident as set forth in his policy. The plaintiff then filed a separate complaint seeking a declaration of the applicable policy limits. In this complaint, the plaintiff asserted that Ms. Southard acted without his authority or permission in rejecting the standard UM coverage and that the court should construe the policy to provide for UM coverage equivalent to the bodily injury liability limits.

On July 3, 1997, the defendant moved for summary judgment alleging that no genuine issue of material fact existed as to (1) whether Ms. Southard acted as the plaintiff's agent in securing the July 1986 policy, and if not, (2) whether the plaintiff ratified the actions of Ms. Southard so as to be bound by her rejection of the standard UM coverage. As to the first issue, the defendant introduced the deposition testimony of Ms. Southard who testified that she would not have obtained insurance for her daughter and son-in-law "had they not asked [her] to do it." In response, however, the

---

[1] Although this opinion refers to Mr. Webber as the plaintiff, his wife and son are also plaintiffs in this action. However, because the issues in this appeal center primarily on Mr. Webber, we refer to him alone as the plaintiff for sake of convenience.

plaintiff introduced an affidavit from himself which stated that he never gave Ms. Southard permission to apply for automobile insurance in July 1986 or to act on his behalf in any of his legal affairs. The plaintiff also introduced his wife's deposition testimony that she never discussed with her mother the possibility of her mother "transacting insurance business" on her behalf.

As to the second issue, the defendant asserted that even if Ms. Southard did not formally act as the plaintiff's agent in applying for insurance, no issue of fact existed as to whether the plaintiff ratified the insurance contract through his semi-annual payment of premiums over a ten-year period. The plaintiff answered that even though he paid the premiums, he did not intend to ratify the lower limits of the UM coverage because he was unaware of the lower policy limits. Although both Mr. and Ms. Webber admitted receiving the semi-annual statements, they each denied actually having read any of them.

On May 19, 1999, the trial court granted the defendant's motion for summary judgment, holding that the plaintiff was bound by Ms. Southard's election of policy limits in the July 1986 policy.[2] On appeal, the plaintiff asserted that the issues of agency and ratification are questions of fact to be decided by a jury and that they are therefore inappropriate for disposition on summary judgment. The plaintiff also argued that a genuine issue of fact exists in this case as to whether he authorized Ms. Southard to act as his agent in procuring the July 1986 policy and as to whether he intended to ratify the actions of Ms. Southard in procuring this policy. The Court of Appeals agreed with the plaintiff and reversed the trial court, finding that genuine issues of fact existed as to both the agency and ratification issues.

The defendant then requested permission to appeal to this Court, which we granted on the sole issue of whether the plaintiff ratified Ms. Southard's election of lower limits for UM coverage. For the reasons given herein, we hold that the plaintiff ratified his insurance contract with the defendant as a matter of law and that the trial court correctly found the applicable UM policy limits to be those set forth in the policy. The judgment of the Court of Appeals is reversed, and this case is remanded to the Anderson County Circuit Court for further necessary proceedings.

## STANDARD OF APPELLATE REVIEW

The standard for reviewing a grant of summary judgment is *de novo* without any presumption that the trial court's conclusions were correct. See Mooney v. Sneed, 30 S.W.3d 304, 306 (Tenn. 2000). Summary judgment is appropriate only when the moving party demonstrates that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. See Tenn. R. Civ. P. 56.04; Penley v. Honda Motor Co., 31 S.W.3d 181, 183 (Tenn. 2000); Byrd v. Hall, 847 S.W.2d 208, 210 (Tenn. 1993). In reviewing the record, "[c]ourts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor." Staples v. CBL & Assocs., Inc., 15 S.W.3d 83, 89 (Tenn. 2000). "If both

---

[2] The trial court did not issue any specific findings of fact or conclusions of law in its order granting the defendant's motion for summary judgment.

the facts and conclusions to be drawn therefrom permit a reasonable person to reach only one conclusion, then summary judgment is appropriate." Seavers v. Methodist Med. Ctr. of Oak Ridge, 9 S.W.3d 86, 91 (Tenn. 1999).

## ANALYSIS

A fundamental principle of agency law is that "[a] principal is bound neither by contracts made by a person not his agent, nor by those of his agent beyond the scope of his actual and apparent authority, which he has not ratified and is not estopped to deny." See, e.g., Bells Banking Co. v. Jackson Ctr., Inc., 938 S.W.2d 421, 425 (Tenn. Ct. App. 1996). Although an unauthorized contract is generally voidable by the principal, a principal who ratifies that contract is bound by its terms as if he or she had executed it originally. See 12 *Williston on Contracts* § 35.22 (4th ed. 1999) (stating that ratification by a principal "relates back and supplies original authority to execute the contract"). Ratification of a contract occurs when one approves, adopts, or confirms a contract previously executed "by another[,] in his stead and for his benefit, but without his authority." James v. Klar & Winterman, 118 S.W.2d 625, 627 (Tex. Ct. App. 1938); see also Gay v. City of Somerville, 878 S.W.2d 124, 127 (Tenn. Ct. App. 1994) (defining "ratification" as "the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another who assumed to act as his agent without authority so to do"). Simply stated, "[r]atification is confirmation after conduct." Gay, 878 S.W.2d at 127.

Before ratification of an unauthorized transaction will be considered valid and binding, the principal must have "'full knowledge, at the time of the ratification, of all material facts and circumstances relative to the unauthorized act or transaction.'" Gough v. Insurance Co. of N. Am., 157 Tenn. 546, 549-50, 11 S.W.2d 887, 888 (1928) (quoting 2 C. J. § 476). Because ratification is usually a question of the principal's intent, this issue is generally regarded as a question of fact to be determined from all of the surrounding circumstances. See Absar v. Jones, 833 S.W.2d 86, 89 (Tenn. Ct. App. 1992); Stainback v. Junk Bros. Lumber & Mfg. Co., 98 Tenn. 306, 311, 39 S.W. 530, 531 (1897).[3] However, ratification may be established "from the conduct of the purported principal manifesting that he consents to be a party to the transaction or from conduct justifiable only if there is a ratification." Osborne Co. v. Baker, 35 Tenn. App. 300, 305, 245 S.W.2d 419, 421 (1951). As this Court stated in Memphis Street Railway Company v. Roe, 118 Tenn. 601, 620, 102 S.W. 343, 348 (1907),

> Where there is a full knowledge of the facts possessed by the principal, and he pursues thereafter a line of conduct which is consistent alone with the theory that the agent was acting for him, then the doctrine of ratification applies, *and it is immaterial whether a ratification was contemplated or not.*

---

[3] We note that our decision in Kelly v. Longmire, 222 Tenn. 307, 317, 435 S.W.2d 818, 823 (1968), characterized the issue of ratification as "a mixed question of fact and law." Nevertheless, the Kelly Court cited no authority for this statement, and its decision on this point has not been followed since. Accordingly, we continue to view ratification as a question of fact and conclude that this issue is not properly decided in a motion for summary judgment unless a reasonable person could only reach one conclusion.

-4-

(emphasis added). Consequently, some actions so clearly evidence a principal's intent to ratify the transaction that ratification may be said to have occurred as a matter of law.

One action that clearly evidences a principal's intention to ratify an otherwise unauthorized contract is the bringing of a lawsuit to enforce the terms of that contract. The law has long been settled that "[b]y bringing an action on the contract a principal will be held to have ratified it, whether the action be against the third person, or against the agent, for the proceeds of the contract." Memphis St. Ry. Co., 118 Tenn. at 621, 102 S.W. at 348.[4] In fact, one court has characterized the bringing of a suit based upon the actions of another as "one of the most unequivocal methods of showing a ratification of an agent's authority . . . ." Mattila v. Olsvick, 365 P.2d 1072, 1074 (Or. 1961).[5]

Importantly, though, once a principal commences an action on a contract, he or she may not ratify only the beneficial parts of the contract and disclaim the remainder of the obligations as unauthorized. James Cable Partners, L.P. v. City of Jamestown, 818 S.W.2d 338, 344 (Tenn. Ct. App. 1991). As the California Supreme Court has articulated this principle,

---

[4] See also Arnold v. St. Paul Fire & Marine Ins. Co., 106 Tenn. 529, 532, 61 S.W. 1032, 1033 (1901) ("Complainant has ratified the act of his agent by bringing suit on the policy procured by him, and is, of course, bound by all the terms of the policy, as though he had taken it out himself."); Gracy v. Potts, 63 Tenn. (4 Baxt.) 395, 396 (1874) ("Gracy, having brought suit upon the note, we think this amounts to a ratification of the act, and as he is seeking to enforce the obligation, he is estopped to deny the authority of his agent to make the contract in his behalf."); Campbell v. Miller, 562 S.W.2d 827, 832 (Tenn. Ct. App. 1977) ("[F]urthermore, by her action in qualifying as Administratrix ad Litem and in seeking the relief prayed for in her complaint herein, she must be regarded as having acquiesced in and ratified the action of her husband in making the contract in question.").

This principle is consistent with cases from other jurisdictions as well. See, e.g., Johnson v. Olympic Liquidating Trust, 953 P.2d 494, 499 (Ala. 1998) ("Bringing suit on an obligation which was entered into by a person without authority is one example of conduct evincing ratification. . . . Thus, the Trust was entitled to judgment as a matter of law on this issue."); Slater v. Berlin, 94 A.2d 38, 42 (D.C. 1953) ("But it is correct to say that an affirmance results in a ratification if the purported principal, with knowledge of the material facts, 'brings suit to enforce promises which were part of the unauthorized transaction or to secure interests which were the fruit of such transaction and to which he would be entitled only if the act had been authorized.'"); Athanas v. City of Lake Forest, 657 N.E.2d 1031, 1038 (Ill. App. Ct. 1995) ("A principal who institutes an action to enforce a contract made by an agent without proper authority is deemed to have ratified the contract."); Clarkson v. Selected Risks Ins. Co., 406 A.2d 494, 497 (N.J. Super. Ct. Law Div. 1979) ("When a principal institutes suit to enforce an unauthorized agreement made by his agent, the principal affirms or ratifies the transaction."); Firemen's Ins. Co. of Newark, N.J. v. Butcher, 147 A. 267, 269 (Vt. 1929) ("The bringing of the suit at law by the mother, claiming the benefit of the policy, was a ratification of the acts, representations, and agreements of her son, by whom the allegations show the policy was procured.").

[5] See also 3 *Couch on Insurance* § 44:32 (Lee R. Russ & Thomas F. Segalla eds., 3d ed. 1997) ("Suit on the unauthorized policy, or on an unauthorized policy issued in substitution of a policy cancelled without authority, is ordinarily a ratification of the policy . . . ." (footnotes omitted)); *Restatement (Second) of Agency* § 97 (1957) ("There is affirmance if the purported principal, with knowledge of the facts, in an action in which the third person or the purported agent is an adverse party: (a) brings suit to enforce promises which were part of the unauthorized transaction or to secure interests which were the fruit of such transaction and to which he would be entitled only if the act had been authorized; or (b) bases a defense upon the unauthorized transaction as though it were authorized; or (c) continues to maintain such suit or base such defense.").

[The plaintiff] must reckon with the elementary rule of agency law that a principal is not allowed to ratify the unauthorized acts of an agent to the extent that they are beneficial, and disavow them to the extent that they are damaging. If a principal ratifies part of a transaction, he is deemed to ratify the whole of it. The reason for the rule is obvious. *Ratification is approval of a transaction that has already taken place. Accordingly the principal has the power to approve the transaction only as it in fact occurred, not to reconstruct it to suit his present needs.*

Navrides v. Zurich Ins. Co., 488 P.2d 637, 640 (Cal. 1975) (emphasis added). Accordingly, the law requires that one must either adopt or reject the contract *in toto*. Security Fed. Sav. & Loan Ass'n of Nashville v. Riviera, Ltd., 856 S.W.2d 709, 715 (Tenn. Ct. App. 1992) (citing Franklin v. Ezell, 33 Tenn. (1 Sneed) 497, 500-01 (1853)).

In this case, we conclude that irrespective of whether Ms. Southard was authorized by the plaintiff to apply for automobile insurance on his behalf, the plaintiff, by bringing an action to obtain benefits under this policy, has ratified the contract with the defendant as a matter of law. Further, once having ratified the contract, the plaintiff is forced either to ratify the contact as a whole and accept the contract as written or to disaffirm the contract as a whole and relinquish any ability to collect payment under the policy. The plaintiff cannot ratify a contract obliging the defendant to provide UM coverage and then assert that he actually intended for the defendant to assume a different obligation. In essence, the plaintiff would have this Court reconstruct the original transaction to suit his present needs or desires, and this we are unwilling to do.

In response, the plaintiff asserts that irrespective of whether he has brought an action to enforce the insurance contract, a genuine issue of material fact is still present as to his intention to ratify the terms of the policy. Citing Absar v. Jones, 833 S.W.2d 86 (Tenn. Ct. App. 1992), he argues that bringing suit upon a contract does not necessarily evidence an intention to ratify it and that, consequently, summary judgment was improperly granted in this case. We respectfully disagree and conclude that the holding of the Court of Appeals in Absar does not demonstrate that a genuine issue of material fact exists in this case.

In Absar, the plaintiffs filed a personal injury lawsuit, and their attorney later settled the action without their knowledge or permission and absconded with the proceeds. After discovering the fraud, the plaintiffs filed suit against their attorney to recover the proceeds, and, later, to set aside the court approval of the fraudulent settlement. The original defendant then argued that by filing suit to recover the settlement proceeds, the plaintiffs effectively ratified the settlement and could not seek to set it aside. The trial court disagreed and permitted the plaintiffs' suit to proceed. Absar, 833 S.W.2d at 87-89.

The Court of Appeals affirmed the trial court's decision, finding that the plaintiffs filed their suit (1) to recover the settlement proceeds only to stop the former attorney from further dissipating the funds, and (2) "to cover all the bases of their uncertain legal obligations." Id. at 90. The court also found that the plaintiffs, prior to filing suit, expressly repudiated the settlement to the original

defendant and his attorney. On these unique facts, the Court of Appeals correctly held that because the filing of the suit could readily be explained without involving any intention to ratify the prior settlement—the plaintiffs were acting only to minimize the damages suffered by them "as a result of the agent's unauthorized act"—the plaintiffs could not be said to have ratified the settlement as a matter of law. Id.

The facts of the present case represent a stark contrast to those presented in Absar, and we find no evidence suggesting that the plaintiff's suit here can be explained by any intention other than to ratify the insurance contract and to claim its benefits. Unlike Absar, the plaintiff's conduct in this case prior to suit was consistent only with an intention to ratify the contract. For example, he regularly paid the premiums on the insurance policy without protest every six months over a period of ten years.[6] Moreover, at no time during this ten-year period did the plaintiff contact the defendant and repudiate the insurance contract.[7] In fact, far from repudiating the policy, the plaintiff transferred the policy, without change or alteration, at least two times since 1986: once in 1987 to a Chevy Nova, and again in 1988 to the vehicle involved in the accident with Ms. Seivers. Contrary to the plaintiff's assertions, therefore, we find no evidence that this case is similar to Absar in any material respect. Accordingly, because all of the plaintiff's actions are consistent only with his intention to fully adopt and ratify the contract, the plaintiff's suit on the insurance contract may be said, as a matter of law, to evidence his intention to ratify the contract.[8]

---

[6] See Goode v. Daughtery, 694 S.W.2d 314, 317 (Tenn. Ct. App. 1985) (holding that "by renewing the policies year after year [husband] would be held to have ratified [wife's] action" in obtaining an insurance policy with lesser UM coverage in his name and without his authority or permission); Members Ins. Co. v. English, 706 S.W.2d 779, 782 (Tex. Ct. App. 1976) ("The Texas courts have found ratification where suit has been filed on the policy, and where premiums have been paid on the policy." (citations omitted)).

[7] See Valley Fidelity Bank & Trust Co. v. Cain Partnership, Ltd., 738 S.W.2d 638, 639-40 (Tenn. Ct. App. 1987) ("Silence can amount to a ratification where a party with knowledge of the transaction fails for a reasonable time to protest or dissent."); see also Memphis St. Ry. Co., 118 Tenn. at 622-23, 102 S.W. at 348 ("It is well settled that where a party, with full knowledge of all the facts creating the liability, acquiesces in what has been done, he thereby ratifies what has been done; and silence in such case, after a reasonable time, will amount to a ratification."); Whitfield v. May, 19 Tenn. App. 431, 438, 89 S.W.2d 764, 769 (1935) ("As a general rule, when a knowledge of the unauthorized transaction of the agent comes to the principal, he must with reasonable promptness disaffirm the acts of the agent, or he will be held bound thereby."); Russell v. Zanone, 55 Tenn. App. 690, 703, 404 S.W.2d 539, 544 (1966) ("As was said by the Supreme Court in Landreth v. Schevenel, 102 Tenn. 486, 493, 52 S.W. 148, 149 [(1899)], 'It is a settled rule that the right to rescind a contract for fraud must be exercised immediately upon its discovery, and that any delay in doing so, and the continued employment, use, and occupation of property received under a contract, will be deemed an election to confirm it.'").

[8] Our decision today permitting one to ratify the rejection of standard UM coverage is in accord with Goode v. Daughtery, 694 S.W.2d 314, 317 (Tenn. Ct. App. 1985), in which the Court of Appeals held that a husband could ratify his wife's rejection of standard UM coverage, even though the wife did so without his authority or permission. Our research reveals, however, that the Ohio Court of Appeals has reached a different conclusion on facts similar to this case in Braden v. State Farm Mut. Auto. Ins. Co., 637 N.E.2d 109 (Ohio Ct. App. 1994). In that case, the court held that only the insured or her expressly authorized representative could reject standard UM coverage, although its holding appears to have rested on the specific intent of the Ohio legislature in this regard. Braden, 637 N.E.2d at 111. By

(continued...)

Finally, the plaintiff asserts that he was incapable of ratifying the insurance contract because he lacked full knowledge of all material facts and circumstances relative to the policy's UM coverage. The plaintiff admits that he received semi-annual notices of the coverage every six months for ten years, but he claims that neither he nor his wife actually read any of the notices. Arguing that this fact demonstrates a triable issue as to his knowledge of the contract, the plaintiff asserts in his brief that "there are probably many potential jurors who also received notices semi-annually from their insurers that still do not have 'knowledge' regarding the types of coverage that they have on their vehicles." We respectfully disagree that the plaintiff has demonstrated a genuine issue of material fact in this regard.

While it is true that "[t]he mere fact that the principal has received or enjoyed the benefits of the unauthorized act will not amount to a ratification, if he did so in ignorance of the facts," East Tenn. & W. N.C. Ry. Co. v. Robinson, 19 Tenn. App. 265, 273, 86 S.W.2d 433, 438 (Tenn. Ct. App. 1935), the plaintiff in this case cannot be said to have acted in ignorance of the facts. Having received nearly twenty separate notices detailing the scope of his automobile insurance coverage, the plaintiff is presumed, as a matter of law, to possess full knowledge of the contract provisions, irrespective of whether he actually read the notices. The law has long been settled that "in the absence of fraud or mistake, an insured cannot claim that he is not bound by the contract of insurance, or certain provisions thereof, because he has not read it, or is otherwise ignorant of, or unacquainted with its provisions." General Am. Life Ins. Co. v. Armstrong, 182 Tenn. 181, 185-86, 185 S.W.2d 505, 506-07 (1945). Indeed, this Court has stated that "the insured is *conclusively presumed* to have knowledge of, and to have assented to, all the terms, conditions, limitations, provisions or recitals in the policy," irrespective of whether the insured actually read, or could read, the insurance contract. Id. at 186, 185 S.W.2d at 507 (citations omitted and emphasis added); De Ford v. National Life & Accident Ins. Co., 182 Tenn. 255, 266-67, 185 S.W.2d 617, 621-22 (1945) (recognizing and applying the same rule, even when the insured could not read the contract).

We simply cannot accept the plaintiff's argument that his failure to read the notices provided by the defendant over the course of ten years somehow permits him to alter or revise the extent of the defendant's contractual obligation. As this Court has stated in rejecting similar arguments,

> "It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written."

De Ford, 182 Tenn. at 267, 185 S.W.2d at 622 (quoting Upton v. Tribilcock, 91 U.S. 45, 50 (1875)). Therefore, we hold that even if the plaintiff did not read any of the nearly twenty separate notices

---

[8] (...continued)

contrast, our statutes expressly permit the insured's "legal representative" to reject standard UM coverage, see Tenn. Code Ann. § 56-7-1201(b)(2), and because the plaintiff in this case later ratified the acts of Ms. Southard, she is considered by law to have been his agent and "legal representative," see Goode, 694 S.W.2d at 317. Accordingly, we find no indication that the General Assembly intended to preclude the result reached in this case.

provided by the defendant, he is conclusively presumed to possess full knowledge of the insurance contract provisions as a matter of law. Accordingly, the plaintiff's argument that he was without sufficient knowledge to form an intent to ratify the insurance contract is without merit.

As we held in Seavers v. Methodist Medical Center of Oak Ridge, 9 S.W.3d 86, 91 (Tenn. 1999), summary judgment is appropriately granted when the facts as developed can lead a reasonable jury to reach only one conclusion. In this case, the facts clearly and indisputably show that the plaintiff ratified the contract with the defendant and that he had an intention to do so. Although the plaintiff repeatedly states that this issue is always a question of fact for the trier of fact to decide, he has brought forth no "specific facts" showing that his conduct prior to filing suit was in any way inconsistent with an intention to ratify or that he lacked full knowledge the policy's terms at the time he filed suit to claim its proceeds. Accordingly, because a reasonable jury could only find that the plaintiff ratified the insurance contract with the defendant, we hold that the trial court correctly granted summary judgment on the proper limits of the plaintiff's UM coverage.

## CONCLUSION

In summary, we hold that no genuine issue of material fact exists as to whether the plaintiff ratified the entire contract of insurance with the defendant. The plaintiff initiated suit to collect monies payable under the contract, and his actions prior to filing suit demonstrate a clear intent to ratify the contract and accept its benefits. Moreover, the plaintiff did not introduce any specific facts to demonstrate that his conduct reflected some intention other than to ratify the contract. Because no reasonable jury, viewing the evidence in the light most favorable to the plaintiff, could conclude that he had failed to ratify the contract, we hold that summary judgment on the issue of liability under the insurance policy was properly granted in favor of the defendant. The judgment of the Court of Appeals is reversed, and this case is remanded to the Anderson County Circuit Court for further proceedings consistent with this opinion.

Costs of this appeal are assessed to the plaintiffs/appellees, Randall D. Webber, Sr., Lisa S. Webber, and Randall D. Webber, Jr., for which execution shall issue if necessary.

_____
WILLIAM M. BARKER, JUSTICE