# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### November 29, 2005 Session

## MARILYN STAVELY v. AMSOUTH BANK (MILAN, TN) and MARY JANE MILLER

**An Appeal from the Circuit Court for Gibson County**
**No. 8037    Clayburn Peeples, Circuit Judge**

---

**No. W2005-01354-COA-R3-CV - Filed December 29, 2005**

---

This is an action to recover damages for the alleged improper disposition of funds in a conservatorship account, conspiracy, and false advertising.  The plaintiff's mother was placed under a conservatorship, and the conservator opened an account at the defendant bank for the conservatorship.  After the plaintiff's mother died, the account was settled and the accounting was approved by the Gibson County Chancery Court.  The plaintiff sought to recover funds from the account, but was informed that the account was settled.  The plaintiff sued the bank and its branch manager for conspiracy, false advertising, and disappearing funds.  The trial court granted the defendants' motion to dismiss.  We affirm.

**Tenn. R. App. 3 Appeal; Judgment of the Circuit Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Marilyn Stavely, Milan, Tennessee, pro se.

Jonathan O. Steen, Jackson, Tennessee, for appellees AmSouth Bank and Mary Jane Miller.

### MEMORANDUM OPINION[1]

Plaintiff/Appellant Marilyn Stavely ("Stavely") is the daughter of Ruth Duggin.  In February 1961, Ruth Duggin was placed under a conservatorship by the County Court of Gibson County.  William Duggin, Ruth Duggin's brother and Stavely's uncle, was appointed as Ruth Duggin's

---

[1]This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

conservator. He opened a conservatorship account at Defendant/Appellee AmSouth Bank ("Bank") on April 8, 1970, by depositing a $1,091.00 check.

Ruth Duggin died on November 6, 2001, and William Duggin filed his final report of the conservatorship with the Gibson County Chancery Court. On January 11, 2002, the Chancery Court issued an order to close the conservatorship. Shortly thereafter, the Bank paid Stavely $1,100 and a local florist $277.31 for funeral flowers. After these checks cleared, the account had a balance of $23.64. In the subsequent months, the $23.64 balance was depleted to a negative balance due to monthly service charges on the account. On August 27, 2002, after several months with a negative balance, the Bank closed the account.

On September 30, 2004, Stavely filed a pro se complaint in the Gibson County Circuit Court against the Bank and the Bank's branch manager, Defendant/Appellee Mary Jane Miller ("Miller"). The complaint alleged that the Defendants engaged in conspiracy and false advertising, and were responsible for disappearing funds. The complaint stated:

> I Marilyn Stavely am filing this petition against AmSouth Bank and Mary Jane Miller Manager of AmSouth Bank charging them with conspiracy, false advertising, and disappearing funds in there (sic) Bank. . . . The employees tried to form a conspiracy against me. They were rude. The tellers would say we don't have any funds. I knew they did have *2* accounts in my Mothers name Ruth I. Duggin. They were not friendly. My uncle Wm. Duggin and I told them to put the accounts in a frozen status after her death. The woman told us she would. The Manager told us she wasn't there anymore. Naome was her name. In my opinion the Funds were given to the wrong persons. I have a piece of paper that went into court (Gibson County Court) explaining I am Ruth I. Duggin's *only daughter and heir to her estate*. I will show this piece of paper in court. I showed this to Mr. Rainey, an employee of AmSouth Bank. He said he couldn't find any funds, when he looked on the computer. They did have a word *Integrity* on the wall of the Bank. They lied about the checking account. I have a Bank statement to prove it was there. I have witnesses also.
>
> This Bank and Employees caused me hurt and pain! They did not give me funds right after my *Mother's Death* (both accounts). My uncle and I ask the Branch Manager at AmSouth would she look and see. She said there wasn't another account she could find.

(emphasis in original). Stavely sought a judgment in the amount of $100,000 for "problems, hurt, and pain."

On March 14, 2005, the Defendants filed their answer with the court. The Defendants asserted numerous defenses to Stavely's claim, including that (1) the complaint should be dismissed for failure to state a claim upon which relief could be granted, (2) Stavely's cause of action was barred by the statute of limitations, (3) the cause of action was barred by the doctrine of laches, (4)

the Bank had been discharged from any further obligation by virtue of its complete payment of the accounts, (5) Stavely lacked standing to assert any interest in Ruth Duggin's accounts, and (6) service of process was insufficient.

Later, the Defendants filed a motion to dismiss and a supporting affidavit by Defendant Miller, describing the pertinent activities in the account, the relevant fees and balances, and the disbursements made from those accounts during their existence. Attached to Miller's affidavit were the Bank's records for the account, including the signature card, account statements, disbursements made from the account, and certified copies of the conservatorship proceedings and accountings. Miller explained that the withdrawals and deposits indicated in the account statements "correspond precisely with the accounting approved by the Chancery Court of Gibson County." She noted that Ruth Duggin and the conservator had an interest only in the single conservatorship account, and had no other accounts at the Bank.

On May 9, 2005, the Gibson County Circuit Court held a hearing on the Defendants' motion to dismiss. The record does not contain a transcript of the hearing, but the trial court's final order noted that Stavely appeared on her own behalf at the hearing, argued her case, and presented witnesses.

On May 19, 2005, the trial court entered an order granting the Defendants' motion to dismiss. After reviewing the pleadings, Miller's affidavit, the Plaintiff's testimony, and the arguments presented at the hearing, the trial court treated the Defendants' motion as a motion for summary judgment. The court ruled that, construing Stavely's allegations liberally, and in a light most favorable to her, there were no disputed issues of material fact as to liability, and that the Bank was entitled to judgment as a matter of law.

Stavely now appeals the trial court's ruling. On appeal, Stavely argues that the Bank employees conspired against her, that the Bank engaged in false advertising, and that the Bank is responsible for disappearing funds.

Summary judgment is appropriate only where the moving party establishes that there are no genuine issues of material fact and that it is, therefore, entitled to a judgment as a matter of law. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993); *see also* Tenn. R. Civ. P. 56.04. In reviewing a motion for summary judgment, "the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Id*. at 210–11. On appeal, this Court reviews the trial court's ruling *de novo*, without any presumption that the trial court's conclusions were correct. *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001).

In the instant case, we have reviewed the record in depth, and conclude that the trial court did not err in granting summary judgment for the Defendants. Stavely failed to produce sufficient evidence to substantiate her claims of conspiracy, false advertising, and disappearing funds. Viewing the evidence in the light most favorable to Stavely and drawing all reasonable inferences

in her favor, we must conclude that the trial court correctly granted summary judgment in favor of the Defendants.

The decision of the trial court is affirmed. Costs of the appeal are taxed against Appellant/Plaintiff Marilyn Stavely, and her surety, for which execution may issue, if necessary.


_____
HOLLY M. KIRBY, JUDGE