IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 10, 2013 Session

**BENEFIT CONSULTING ALLIANCE, LLC v. CLARKSVILLE MONTGOMERY COUNTY SCHOOL SYSTEM, ET AL.**

**Appeal from the Chancery Court for Montgomery County**
**No. MCCHCVMG0920      Michael R. Jones, Judge**

---

**No. M2012-01580-COA-R3-CV - Filed August 5, 2013**

---

Consulting group that served as the agent of record for a trust established to provide insurance to employees of a county school system filed a complaint alleging a violation of the Open Meetings Act when a group of trustees met for lunch with one of the consulting group's employees and later changed the school system's agent of record when the employee formed a different association with another company.  The trial court found that no violation of the Open Meetings Act occurred at the lunch meeting because no decision was made during the lunch.  We affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

William K. Lane, III, Franklin, Tennessee, for the appellant, Benefit Consulting Alliance, LLC.

Carol M. Joiner, Clarksville, Tennessee, for the appellees, Clarksville Montgomery County School System, et al.

**OPINION**

**I. BACKGROUND**

The Clarksville-Montgomery County Board of Education ("BOE") established an Agreement and Declaration of Trust (the "Trust") in 1982 for the purpose of establishing a plan providing healthcare and other group insurance benefits to its employees.  Trustees were named to collect and manage contributions from the employer and employees and to carry

out the purposes of the Trust, including the selection of insurance companies to provide the benefits.

Beginning in at least the 1990s, the Trustees worked with a consultant named David Fessenden, who provided information to the Trustees about which insurance company could provide the Board's employees with the best benefits for the best price. Mr. Fessenden was affiliated with different consulting groups over the years, and the Trustees consistently maintained their relationship with Mr. Fessenden regardless of the name of the company with which he was associated.

In 2004 Mr. Fessenden was associated with a company called Risk Consultants, Inc. In November of that year Benefit Consulting Alliance, LLC ("BCA") purchased the assets of Risk Consultants, which included Mr. Fessenden's block of business. The effect of this transaction was that BCA replaced Risk Consultants as the registered agent for the Trust and all other companies for which Mr. Fessenden provided consulting services.[1]

Other members of David Fessenden's family worked with him at BCA and serviced the Trust account along with him. These individuals included Chris Fessenden, Mark Fessenden, and Kim Phelps. The Trustees interacted with different individuals of the Fessenden family while they were associated with BCA. The Trustees named as defendants in this lawsuit testified that none of them ever met with any individual at BCA other than one of the Fessendens to discuss the Trust's insurance benefits or needs.

At some point in December 2008 David Fessenden contacted one of the Trustees, Jeanine Chester, to schedule a business lunch. Mr. Fessenden indicated to Ms. Chester that there was an "item of importance" he wanted to discuss with Ms. Chester, Danny Grant, and Bruce Jobe, all of whom were Trustees. These three Trustees met Mr. Fessenden for lunch on December 17. During this lunch, Mr. Fessenden informed the Trustees that Chris Fessenden's employment with BCA had been terminated and that he (David) would be terminated within thirty days. Mr. Fessenden indicated that Kim Phelps and Mark Fessenden were still employed with BCA, however, and could continue to provide services to the Trust and answer any questions the Trustees might have.

In a letter dated December 22, the President of BCA, Wayne Emery, sent a letter to Ms. Chester to inform her that Chris Fessenden's employment with BCA was terminated on December 15 and that David Fessenden's employment would be terminated on January 15, 2009. Mr. Emery indicated that BCA's remaining staff, including Kim Phelps and Mark

---

[1]A registered agent receives commissions from the insurance company providing benefits for a registered agent's client, such as the Trust.

Fessenden, were committed to providing the Trust with the "highest quality of employee consulting services."

In an e-mail dated March 16, 2009, Chris Fessenden informed the Trustees that the Fessendens had formed a new entity called Risk Consultants America. Chris wrote:

> This process has taken several months as we had to obtain a legal release from our BCA non-competition agreement, which release was obtained on Friday, March 13, 2009. Our team, Dave, Kim, Mark, Debbie and Chris are committed to providing the same superior service as we did as your consultant, Risk Consultants, Inc. prior to our BCA partnership and while we were partners with BCA over the last 4 years.
>
> . . . . .
>
> In order for us to work as your group insurance consultant, we will need you to authorize us as your consultant/agent of record. We would like to continue our working relationship and we will send you the proper forms and directions for submission in a subsequent email, for your consideration.
>
> We sincerely appreciate our long term relationship and look forward to continuing as your employee benefits consultants.

Ms. Chester then sent a letter dated March 16 to the Trust's insurance provider, BlueCross BlueShield of Tennessee, instructing it to designate David Fessenden of Risk Consultants America as the Trust's Consultant/Agent of Record effective March 13, 2009.

## II. BCA'S AMENDED COMPLAINT

Following the Trust's decision to change its consultant from BCA to Risk Consultants America, BCA filed a lawsuit against the BOE, Clarksville-Montgomery County School System, Clarksville-Montgomery County Insurance Trust Committee, Ms. Chester, Mr. Jobe, and Mr. Grant. The individuals were sued in their individual capacities and as members of the Clarksville-Montgomery County Insurance Trust Committee. The allegations BCA asserted in its Amended Complaint include the following:

> 14. Plaintiff avers that on or about December 17, 2008 at or around 12:00 p.m., the three individual members of the Trust Committee members named herein above met at Ruby Tuesday, 2239 Madison Street, Clarksville, Tennessee 37043.

-3-

15. At that non-public meeting, those members of the Trust Committee were solicited by David Fessenden, a consultant, officer, and share-holder at that time of BCA, and Kim Phelps, an employee and share-holder of BCA who is also the daughter of David Fessenden. The purpose for which the meeting was held was in part to discuss and deliberate toward a decision on appointing a new Agent of Record other than BCA. As evidenced by the email from Jeanine Chester . . ., David Fessenden "indicated there is an item of importance that he would like to meet with the three of us to discuss . . . ." At this point in time, David Fessenden's direct employment with BCA was known to be terminated effective as of January 15 2009 and upon termination he, Fessenden, remained a share-holder in BCA. At the time of the meeting, David Fessenden was under contract as a consultant for BCA.

. . . . .

19. At the time of the meeting, BCA was the Agent of Record for the CMCSS.

20. When the new Agent of Record agreement became effective on or about March 16, 2009, Mr. Fessenden was employed by Risk Consultants America, Inc. . . .

21. The meeting of the Trust Committee members was a meeting as defined within Tenn. Code Ann. § 8-44-102(b)(2), or in the alternative, to the extent that the meeting was a chance meeting or informal assemblage of two or more members, public business was deliberated at said meeting in strict violation of Tenn. Code Ann. § 8-44-102(c).

22. Specifically, at said meeting, discussion and deliberation of delaying the ratification of a new Consultant/Agent of Record agreement until after Mr. Fessenden terminated his business relationship with BCA and began one with Risk Consultants of America took place.

23. No public notice was given of this meeting in strict violation of Tenn. Code Ann. § 8-44-103(b).

24. No minutes of this meeting were kept in strict violation of Tenn. Code Ann. § 8-44-104.

25. Any deliberations on this matter conducted by the Trust Committee members via electronic means were in violation of Tenn. Code Ann. § 8-44-102(c) as well as § 8-44-108.

26. Plaintiff suffered damages as a result of the conduct and actions of Mr. Fessenden and the Trust Committee through the loss of commissions.

27. Plaintiff avers that the actions taken by the Trust Committee in awarding the Consultant/Agent of Record agreement to Risk Consultants of America are null, void, and of no effect pursuant to Tenn. Code Ann. § 8-44-105.

BCA asked the court to award it the following relief, *inter alia*:

2. That this Honorable Court find that the Trust Committee violated the Tennessee Open Meetings Act and the actions taken by its members in approving the contract between the Trust Committee and Risk Consultants of America;

3. That said action and the resulting contract be declared null, void, and of no effect pursuant to the provisions of the Tennessee Open Meetings Act, specifically Tenn. Code Ann. § 8-44-105;

. . . . .

5. That the Plaintiff be awarded damages in the amount of the loss of commission suffered due to the actions and conduct of the Trust Committee.

### III. TRIAL COURT'S RULING

Both BCA and the Defendants filed motions for summary judgment. Following a hearing, the trial court denied BCA's motion and granted the Defendants' motion for summary judgment. At the end of the hearing on the motions, the following colloquy occurred between the trial court and BCA's counsel:

THE COURT: Mr. Lane, do I have to make the determination that this luncheon of these people was a meeting under the public - - under the Tennessee public meetings law?

MR. LANE: Yes, sir.

. . . . .

THE COURT:        Looking at the Trust Agreement that was entered on the 24th of August, 1982, and looking at Page 7 of that agreement - - and it's entry 21 - - it said: All actions of the trustees are subject to the approval of such board - - referring back to the Clarksville-Montgomery County Board of Education - - in the administration of the trust fund, and the performance of all other functions provided for in this instrument are done by the trustees as an instrumentality of the Clarksville-Montgomery County Board of Education.

So it's my belief that they would be subject to the Tennessee public meetings law; however, I cannot find that this lunch - - you can draw all inferences possible that this lunch would have been subject to the Open Meetings Law based on just continuation of, what, 1982 forward, but I don't believe that there was any meeting that would have been necessary under the public meetings law. For the purpose of the summary judgment motion, I'll also rule that the three named individuals will not have any personal liability in this matter.

So I guess that I am granting the Defendant's motion for summary judgment.

MR. LANE:        If your Honor please, for clarity purposes, with regard to the fact that the committee is found to be subject to the Open Meetings Act, is what you're saying is that regardless of the decisions that were made, they're subject to the Act?

THE COURT:        What I'm saying is they made no decisions at that lunch so that it was not subject to the Act. Just people eating lunch.

In its Order the trial court wrote:

    1. Upon review of the Agreement and Declaration of Trust dated August 24, 1982, . . . the Court finds by the terms of said Agreement the

-6-

Clarksville-Montgomery County Employees Insurance Trust ("Trust") is an instrumentality of the Clarksville-Montgomery County Board of Education, and is therefore subject to the Open Meetings Act.

2. While the Trust is subject to the Open Meetings Act, the lunch meeting that occurred in December 2008 attended by Bruce Jobe, Jeanine Chester, Danny Grant and David Fessenden, drawing all possible inferences, was not subject to the Open Meetings Act based upon the evidence before the Court and as such, no violation of the Open Meetings Act occurred.

3. The individual Defendants Bruce Jobe, Jeanine Chester, and Danny Grant have no individual liability.

Therefore, the Court finds that Defendants' Motion for Summary Judgment is well taken and is GRANTED and that Plaintiff's Motion for Summary Judgment is DENIED.

BCA appeals the trial court's judgment granting the Defendants' motion for summary judgment. BCA argues the trial court erred in ruling the Trust Committee was not subject to the Open Meetings Act "when changing the designated agent of record for employee insurance benefit purposes."[2]

## IV. ANALYSIS

Initially we note that the issue BCA raises on appeal is different from the issue that it raised in its Amended Complaint and that the trial court ruled upon. BCA alleged in its Amended Complaint that the Trustees had a lunch meeting on December 17, 2008, "to discuss and deliberate toward a decision on appointing a new Agent of Record other than BCA." BCA further alleged that "at said meeting, discussion and deliberation of delaying the ratification of a new Consultant/Agent of Record agreement until after Mr. Fessenden terminated his business relationship with BCA and began one with Risk Consultants of America took place." BCA did not allege before the trial court, as it alleges here, that the Defendants violated the Open Meetings Act later when they changed the designated agent of record for employee insurance benefit purposes.

The trial court's judgment was limited to determining the issue BCA raised, *i.e.*, whether the Trustees who met with David Fessenden for lunch on December 17 violated the Open Meetings Act by making a decision or deliberating toward a decision during that

---

[2]BCA does not appeal the trial court's ruling that the Trustees have no individual liability.

meeting. Our review will therefore be limited to this issue as well. *See City of Cookeville ex rel. Cookeville Regional Med. Ctr. v. Humphrey*, 126 S.W.3d 897, 905-06 (Tenn. 2004) (citing *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983)) (question not raised in trial court will not be entertained on appeal).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *BellSouth Advertising & Publishing Co. v. Johnson,* 100 S.W.3d 202, 205 (Tenn. 2003); *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 285 (Tenn. 2001); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). We review the summary judgment decision as a question of law. *Finister v. Humboldt Gen. Hosp., Inc.*, 970 S.W.2d 435, 437 (Tenn.1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn.1997). Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004); *Staples v. CBL & Assoc.*, 15 S.W.3d 83, 88 (Tenn. 2000).

The requirements for the grant of summary judgment are that the filings supporting the motion show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Blair v. West Town Mall,* 130 S.W.3d 761, 764 (Tenn. 2004); *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). Consequently, summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion - that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001); *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001); *Staples*, 15 S.W.3d at 88.

In our review, we must consider the evidence presented at the summary judgment stage in the light most favorable to the non-moving party, and we must afford that party all reasonable inferences. *Doe v. HCA Health Servs., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001).

A party seeking summary judgment must demonstrate the absence of any genuine and material factual issues. *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998) (citing *Byrd v. Hall*, 847 S.W.2d at 214). To be entitled to summary judgment, a defendant moving party must either (1) affirmatively negate an essential element of the non-moving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1, 9 (Tenn. 2008). As to

the second method, the standard is whether the moving party establishes that the nonmoving party *cannot establish* an essential element *at trial*, not whether the nonmoving party's evidence *at the summary judgment stage* is sufficient to establish an essential element. *Id.* at 7.

Each of the Trustees who attended the lunch meeting on December 17 with David Fessenden were deposed and testified that Mr. Fessenden informed them during their lunch meeting that BCA had terminated Chris Fessenden's employment and that his own employment would be terminated within the next few weeks. Mr. Fessenden let the Trustees know that Kim Phelps and Mark Fessenden were still with BCA and could provide any information or services the Trust needed. Each of the Trustees testified that no decision was made during this lunch meeting.

BCA submitted no evidence to the contrary. In fact, BCA admitted the following two statements of undisputed material fact the Defendants submitted in support of their motion for summary judgment:

19. As to the lunch meeting on December 17, 2008, no deliberation or decision was made by Jobe, Chester, and Grant.

22. The Trust members did not need to decide to delay the "ratification of a new Consultant/Agent of Record agreement" because they were still being serviced by Kim and Mark who were still working with Plaintiff.

Based on the Trustees' uncontroverted evidence of what occurred during the lunch meeting and BCA's admission of the Defendants' statements of undisputed material facts, we conclude that the Defendants have affirmatively negated an essential element of BCA's claim and have shown that BCA cannot prove an essential element of its claim at trial. We therefore hold the trial court appropriately granted the Defendants' motion for summary judgment and denied BCA's motion for summary judgment.

## V. CONCLUSION

The judgment of the trial court granting the Defendants' motion for summary judgment and dismissing BCA's Amended Complaint is affirmed. Costs of appeal are assessed against the appellant, Benefit Consulting Alliance, LLC, for which execution shall issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE