IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 8, 2025 Session

## KENNETH KELLY ET AL. v. THOMAS A. STEWART

**Appeal from the Chancery Court for Montgomery County**
**No. MC-CH-CV-CD-20-20      Ben Dean, Chancellor**

___

**No. M2024-00296-COA-R3-CV**

___

This case involves allegations of malfeasance by several members of a family business against another member. The plaintiffs asserted both derivative and individual claims. We affirm the trial court's decision regarding the merits of the case but vacate and remand the portion of the trial court's decision regarding damages and attorney fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Vacated and Remanded in Part**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Taylor R. Dahl and Taylor V. Hutson, Clarksville, Tennessee, for the appellant, Thomas A. Stewart.

Robert A. Peal, Evan S. Rothey, and David G. Schuette, Nashville, Tennessee, for the appellees, Kenneth Kelly, Gary Kelly, Matthew Kelly, and Advanced Hearing Aid Group, LLC.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Advanced Hearing Aid Group, LLC ("AHAG" or "the LLC"),[1] was started in 1996 by Thomas S. ("Tom") and Shirley Stewart, husband and wife.[2] The original members of the limited liability company were Tom and Shirley; their son, Thomas A. Stewart ("Andy" or "Mr. Stewart"); their son-in-law, Kenneth Kelly (married to their daughter, Elaine

___

[1] The company was originally known as Beltone Hearing Aid Service, LLC, and subsequently effectuated several name changes.

[2] We will use the family members' first names where necessary for clarity.

Kelly); and Kenneth's brother, Gary Kelly. The members executed an operating agreement to govern AHAG, the relevant terms of which will be discussed below. In the early years, Tom acted as the company's operating manager, in accordance with the operating agreement. Upon Tom's death in 2006, Shirley inherited his interest in AHAG and thereafter possessed the largest membership interest in the LLC. All of the remaining family members continued to run the company; Andy assumed some of the managerial duties, including keeping the company's books and records. Shirley died in 2018, and her interest passed into a revocable living trust ("Shirley's trust").

Before and after Shirley's death, Kenneth, Gary, and Matthew Kelly[3] (collectively, "the Kellys") asked Andy for access to all of AHAG's books and records. In August 2019, all of the AHAG members executed a document entitled "Action by Consent of the Members" effectuating membership changes: (1) the transfer of all of the membership interest in AHAG owned by Shirley's trust into the Mary Elaine Kelly Exempt Trust ("Elaine's trust"), (2) the sale of Andy's individual membership interest in AHAG to Elaine, and (3) Elaine's assignment of her membership interest to the Kelly Revocable Living Trust ("the Kelly trust").[4] Moreover, the members approved the appointment of Elaine as manager of the LLC.

The Kellys filed this lawsuit against Andy Stewart in May 2020, seeking access to the company records and asserting a claim for breach of contract. In July 2021, the trial court permitted the Kellys to file an amended complaint, which added AHAG as a plaintiff (Kenneth, Matthew, Gary, and AHAG collectively referred to as "Plaintiffs"). The amended complaint included several additional causes of action: a derivative action for breach of contract and direct and derivative claims for conversion and unjust enrichment; a direct action for fraudulent inducement; and direct and derivative actions for breach of fiduciary duty. In August 2023, Plaintiffs filed a motion for sanctions for spoliation of evidence. The court held a hearing on the motion for spoliation sanctions and took the motion under advisement to be decided during the trial or at its conclusion.

The case went to trial over the course of two days in October 2023. Plaintiffs put on testimony from Kenneth, Matthew, and Gary Kelly, as well as an expert witness, Jeffery Proctor, a certified public accountant. The defense presented the testimony of Mr. Stewart. After hearing all of the evidence, the court made a lengthy ruling from the bench in favor of Plaintiffs (discussed in detail below) and asked Plaintiffs' counsel to submit an affidavit of attorney fees. The court also requested briefing from the parties on the permissibility of the court awarding attorney fees under relevant statutory authority. (Additional procedural

---

[3] Matthew Kelly is the son of Elaine and Kenneth Kelly.

[4] The ownership changes resulted in the following ownership structure: 88.236% interest held by Elaine's trust; 9.804% interest held by the Kelly trust; 0.98% interest held by Gary Kelly; and 0.98% interest held by Matthew Kelly.

history relevant to the issue of attorney fees will be outlined in further detail in our analysis.)

On January 25, 2024, the trial court entered an order on attorney fees and a separate order with findings of fact, conclusions of law, and a final judgment. In its final judgment, the court incorporated by reference the transcript of its oral ruling (from October 24, 2023) and made the following findings:

Count I: Members' Rights to Records—The Court finds that Plaintiffs did have a statutory right to records, and that Defendant Stewart denied them access to those records despite having received notice from an attorney that demanded he produce those records to the Plaintiffs.

Count II: Breach of Operating Agreement—The Court finds that the Operating Agreement (Trial Exhibit "T.E." 4) was a valid and binding legal contract, that defendant Stewart breached the Operating Agreement by paying himself in excess of his commissions, and the Plaintiffs were damaged by that breach in the amount of $731,426. As a result, Plaintiff Advanced Hearing Aid Group, LLC is awarded $731,426 as damages for Defendant Stewart's breach of the Operating Agreement. The Court, however, will offset that award by reducing it in the amount [of] Defendant Stewart's ownership percentage (4.902%) plus one half of Shirley A. Stewart's ownership percentage (88.236%/2 = 44.12%), for a total offset of (44.12% + 4.902%) = 49.022%. That equates to a total offset reduction of $358,559, and a total award of compensatory damages of $372,869.

[The Court found the claims for conversion and fraudulent inducement to be moot and dismissed the unjust enrichment claim.]

Count VI: Breach of Fiduciary Duty—Having found for the Plaintiffs on Count II, the Court finds that the claim for breach of the fiduciary duty of loyalty is moot. Regarding the fiduciary duty of care, however, the Court finds that Defendant Stewart breached his fiduciary duty of care in regards to maintaining the books and records of Advanced Hearing Aid Group, LLC. As part of Plaintiffs' damages in this matter, the Court finds that the time and fees of Plaintiff's [sic] accounting expert, Jeffery Proctor, who was very credible in his report, were reasonable and Plaintiffs are awarded $14,641.25 as a result of Defendant Stewart's breach of fiduciary duty, and as a result of destruction of records. ($15,755.25 minus $1,125 previously awarded as discretionary costs.)

Spoliation of Evidence—The Court finds that it is more probable than not that Defendant Stewart intentionally destroyed documents that were owed to the Plaintiffs in this matter. The Court finds also that the testimony of Defendant Stewart on the issue of whether the documents were destroyed is not credible.
. . .

<u>Punitive Damages</u>—In regards to the breach of fiduciary duty of care and spoliation of evidence, the Court finds, by clear and convincing evidence, that Defendant Stewart intentionally, maliciously, and fraudulently destroyed business records of Advanced Hearing Aid Group, LLC. According to the analysis of the factors contained in Exhibit A [a transcript of the trial court's oral ruling], the Court awards Plaintiffs $20,000 in punitive damages for the intentional and fraudulent destruction of business records.

Finally, the court awarded Plaintiffs pre-judgment interest, attorney fees, and discretionary costs.

On appeal, Mr. Stewart raises the following issues: (1) whether the trial court erred in determining that he breached the operating agreement because Plaintiffs ratified his conduct; (2) whether the trial court erred in determining that he violated a duty to maintain and provide records because Plaintiffs ratified his conduct; and (3) whether the trial court erred by awarding attorney fees to Plaintiffs because the court added the attorney fees to the compensatory damages. Plaintiffs argue that the trial court did not err in its rulings and that they are entitled to their reasonable attorney fees and costs on appeal.

STANDARD OF REVIEW

We review a trial court's findings of fact in a bench trial de novo on the record with a presumption of correctness, unless the preponderance of the evidence indicates otherwise. TENN. R. APP. P. 13(d); *Lovlace v. Copley*, 418 S.W.3d 1, 16 (Tenn. 2013). We review the trial court's conclusions of law de novo, with no presumption of correctness. *Kaplan v. Bugalla*, 188 S.W.3d 632, 635 (Tenn. 2006).

ANALYSIS

I.      Ratification

As to both the breach of contract claims and the statutory/breach of fiduciary duty claims (referred to by the trial court as "the document case"), Mr. Stewart argues that the trial court's ruling was in error because Plaintiffs ratified his conduct.[5]   The trial court

---

[5] On appeal, Mr. Stewart does not challenge the trial court's findings that he engaged in the conduct at issue.  On the breach of contract claim, he does not dispute the trial court's determination that he paid himself "in excess of commissions" in the amount of $731,426 without the approval of his fellow LLC members, as required by the operating agreement.  Similarly, Mr. Stewart does not dispute on appeal that his conduct in handling the company records fell short of the standard of care.  Rather, in both instances, his position is that Plaintiffs ratified his conduct.

rejected Mr. Stewart's ratification argument in its ruling.[6]  For the reasons discussed below, we find no error in the trial court's decisions.

We begin with the concept of ratification, which is part of agency law.  Although a principal is not generally bound by an unauthorized contract, "a principal who ratifies that contract is bound by its terms as if he or she had executed it originally." *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 270 (Tenn. 2001).  A simple definition of ratification is "'confirmation after conduct.'"  *Id.* (quoting *Gay v. City of Somerville*, 878 S.W.2d 124, 127 (Tenn. Ct. App. 1994)).  Ratification can also be described as "'the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another who assumed to act as his agent without authority so to do.'"  *Id.* (quoting *Gay*, 878 S.W.2d at 127).

To establish ratification, the person claiming the defense[7] must prove three elements: "'(1) [a]cceptance by the principal of the benefits of the agent's act, (2) with full knowledge of the facts and (3) circumstances or an affirmative election indicating an intention to adopt the unauthorized arrangement.'"  *Bells Banking Co. v. Jackson Ctr., Inc.*, 938 S.W.2d 421, 427 (Tenn. Ct. App. 1996) (quoting 2A C.J.S. *Agency* § 71 (1972)).  Thus, in order for ratification of a transaction to take effect, "the principal must have '"full knowledge, at the time of the ratification, of all material facts and circumstances relative to the unauthorized act or transaction."'"  *Webber*, 49 S.W.3d at 270 (quoting *Gough v. Ins. Co. of N. Am.*, 11 S.W.2d 887, 888 (Tenn. 1928) (quoting 2 C.J. § 476)).  The issue of ratification is usually a question of fact because it is dependent on the principal's intent.  *Id.*  However, certain actions may "so clearly evidence a principal's intent to ratify the transaction that ratification may be said to have occurred as a matter of law."  *Id.*

A.  Breach of contract claim

On this claim, Mr. Stewart is asserting that Plaintiffs ratified the excess payments (above his commissions) to himself.  More specifically, he argues that Plaintiffs "ratified Mr. Stewart's conduct explicitly and implicitly, both through the Consent Action and the parties' course of conduct, because they had actual or constructive notice of the company's history of making the payments to the managers or Mr. Stewart's receipt of the payments."  We will address the course of conduct and consent action positions in turn.

---

[6] In its final order, the trial court incorporated its oral ruling, and in that ruling, the court expressly addressed and rejected Mr. Stewart's ratification theory.

[7] Ratification is an affirmative defense and, therefore, the burden was on Mr. Stewart to prove it.  *See Valley Fid. Bank & Tr. Co. v. Cain P'ship, Ltd.*, 738 S.W.2d 638, 639 (Tenn. Ct. App. 1987).

1. The "course of conduct" argument

Here, Mr. Stewart asserts that Plaintiffs had sufficient knowledge "that the practice of the company was to pay the manager the leftover profits, which would have been insufficient to hire a person to perform such tasks." Further, he reasons that Plaintiffs could "see from the tax returns that Mr. Stewart and his mother were receiving the payments." According to Mr. Stewart, these facts are sufficient to establish actual or constructive notice sufficient for ratification.

As to actual notice, the trial court expressly rejected Mr. Stewart's position in its oral ruling (which was incorporated into the final order):

> [G]oing back to the ratification issue, I find it credible that they [the individual plaintiffs] didn't know and they wanted this information [the requested records] and the fact that – I'll get into the spoliation of the burn barrels and the rest of the records, where are they –you know, they didn't know. And the Court finds they didn't know about the compensation. When I asked you [Mr. Stewart], did you ever talk about it [the compensation] or discuss it with them and you said no. So I find that credible.

When the trial court has heard the testimony of witnesses, we give "considerable deference when reviewing issues that hinge on the witnesses' credibility because trial courts are 'uniquely positioned to observe the demeanor and conduct of witnesses.'" *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (quoting *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000)). We will not reject a trial court's "'assessment of witness credibility absent clear and convincing evidence to the contrary.'" *Id.* (quoting *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999)). Mr. Stewart has not challenged the trial court's credibility findings, and clear and convincing evidence does not appear in the record to contradict the trial court's conclusion. Therefore, the actual notice argument fails.

On the constructive notice argument, Mr. Stewart relies upon the idea (discussed above) that certain "actions so clearly evidence a principal's intent to ratify the transaction that ratification may be said to have occurred as a matter of law." *Webber*, 49 S.W.3d at 270. Conduct falling within this exception occurs:

> "Where there is a full knowledge of the facts possessed by the principal, and he pursues thereafter a line of conduct which is consistent alone with the theory that the agent was acting for him, then the doctrine of ratification applies, and it is immaterial whether a ratification was contemplated or not."

*Id.* (quoting *Memphis St. Ry. Co. v. Roe*, 102 S.W. 343, 348 (Tenn. 1907)). The "full knowledge" requirement means that the principal must have known "'of all material facts and circumstances relative to the unauthorized act or transaction.'" *Regions Bank v. Bric*

*Constructors, LLC*, 380 S.W.3d 740, 764 (Tenn. Ct. App. 2011) (quoting *Thornton v. Allenbrooke Nursing and Rehab. Ctr., LLC*, No. W2007-00950-COA-R3-CV, 2008 WL 2687697, at *8 (Tenn. Ct. App. July 3, 2008)).

Having set out the legal principles governing ratification as a matter of law, we conclude that the facts of this case, as determined by the trial court, do not support its application here. Mr. Stewart has not pointed to a course of conduct "'which is consistent alone with the theory that the agent [Mr. Stewart] was acting for [the plaintiffs].'" *Webber*, 49 S.W.3d at 270 (quoting *Memphis St. Ry. Co.*, 102 S.W. at 348). The Kellys' actions are most consistent with those of LLC members who trusted the member in charge of bookkeeping and recordkeeping for the company. Once they received some (but not all) of the records requested from Mr. Stewart, Plaintiffs had to hire an accountant to piece together whether and to what extent Mr. Stewart had made unauthorized payments to himself. The evidence does not lead to an inescapable conclusion that Plaintiffs intended to ratify Mr. Stewart's conduct, and Mr. Stewart's attempt to argue otherwise fails.

2. Action by consent argument

Mr. Stewart also takes the position that Plaintiffs' signing of the Action by Consent in August 2019 constituted explicit ratification of his conduct in receiving the excess payments. In particular, Mr. Stewart relies upon the following language in the Action by Consent:

> All prior actions of ADVANCED HEARING AID GROUP, LLC, whether by Managers or Members, were and hereby are ratified and confirmed as of this ___ day of ___, 2019. The records of ADVANCED HEARING AID GROUP, LLC shall be updated and these minutes shall serve as ratification and confirmation of all prior actions of ADVANCED HEARING AID GROUP, LLC, and all individuals, members and managers on its behalf as authorized representatives of same.

Mr. Stewart interprets this language, particularly the second sentence of the quoted passage, as a ratification of "Mr. Stewart's father's decision to pay managers of AHAG the profits,[8] Mr. Stewart's mother's decision to split the profits with Mr. Stewart, or Mr. Stewart's receipt of the payments in return for performing the management duties." It is worth noting that the actions of Mr. Stewart's father and mother are not at issue. The conduct in question is Mr. Stewart's actions in paying himself "management fees" without his being named the operating manager, as required by the operating agreement, and without a vote of the members to approve compensation for the operating manager, also required by the operating agreement. The relevant language of the Action by Consent

---

[8] The operating agreement named Tom Stewart the operating manager and provided for his compensation.

provides for ratification of the prior actions of "all individuals, members and managers on its [the LLC's] behalf as authorized representatives of same." As previously discussed, Mr. Stewart was not acting as an authorized representative of AHAG when he engaged in the conduct in question.

We find no error in the trial court's determination that Mr. Stewart breached the operating agreement.

B. Breach of duty with respect to the handling of records

Mr. Stewart argues that, by signing the Action by Consent, Plaintiffs ratified his prior conduct and thereby "doomed their claim that Mr. Stewart violated any obligation to maintain or provide records." His reasoning is as follows:

> They made a formal request for these records on March 22, 2019. Although Mr. Stewart provided several years' worth of records to Ms. Kelly in November 2019, he had not provided these records to the Kellys as of the time that he sold his membership interest to Ms. Kelly.

> Since the Kellys had not received the records that they had requested when they signed the Consent Action, they signed the Consent Action knowing that they had not received those records. Nonetheless, they signed the Consent Action and "ratifi[ed] and confirm[ed]" "all prior actions of [AHAG]," including those of its "members," which included Mr. Stewart. They did so after Ms. Kelly presented the Consent Action to them so that Mr. Stewart could sell his interest in AHAG to her and leave the company. The intent of the parties is clear from the Consent Action: Mr. Stewart was to sell his interest and leave the company, and he, the Kellys, and Ms. Kelly intended to ratify all prior actions of the company and its members in order to clean the slate.

As discussed below, we find no merit in Mr. Stewart's argument.

Mr. Stewart's reasoning fails for the same reasons as Mr. Stewart's consent action argument on the breach of contract claim: the language of the Action by Consent ratified "prior actions of ADVANCED HEARING AID GROUP, LLC, and all individuals, members and managers *on its behalf as authorized representatives* of same." (Emphasis added). In the same paragraph of the Consent Action (quoted above) relied upon by Mr. Stewart, the parties agreed that "[t]he records of ADVANCED HEARING AID GROUP, LLC shall be updated." Mr. Stewart was not authorized to hide or destroy documents or to refuse to turn over documents when requested by other members. By refusing to turn over company records until after the Action by Consent (and by destroying documents), Mr. Stewart suppressed the information concerning his unauthorized conduct. The trial

court found that Mr. Stewart breached his statutory duty to provide other members with access to the records and his fiduciary duty of care to maintain the books and records of the LLC. The trial court determined that, under the required clear and convincing standard, Mr. Stewart "intentionally destroyed documents that were owed to the Plaintiffs." The trial court also found, by clear and convincing evidence, that Mr. Stewart "intentionally, maliciously, and fraudulently destroyed business records" of the LLC and awarded punitive damages. Plaintiffs' signing of the Action by Consent does not evidence an intent to ratify such conduct by Mr. Stewart.

## II. Attorney fees

Finally, Mr. Stewart argues that, even if the trial court did not err in its rulings on the merits of Plaintiffs' claims, the court erred in making the award of attorney fees. For the reasons discussed below, we have determined that the trial court's attorney fees award must be vacated and remanded.

*Proceedings in the trial court*

We begin by outlining the court's oral ruling from October 24, 2023, and the post-trial filings that led up to the court's final judgment, entered on January 25, 2024. In its oral decision from the bench on October 24, 2023, the court ruled as follows: On the breach of contract claim, the court ruled that Mr. Stewart breached the operating agreement by paying himself management fees in excess of his commissions and that these excess payments would have to be repaid. (The issue of damages on this claim was discussed later in the court's ruling.) In looking at the claims for breach of fiduciary duty, the trial court ruled that the fiduciary duty claim regarding the management fees was moot because the court found a breach of contract. The court went on to rule that Mr. Stewart breached his fiduciary duty of care to maintain, preserve, and disclose the company records. The court treated this fiduciary duty claim (count 6 of the amended complaint) together with the claim for breach of the statute regarding an LLC member's right to company records (count 1 of the amended complaint). The court then considered the spoliation claim raised by Plaintiffs and ruled that the evidence preponderated in favor of a finding that Mr. Stewart had spoliated evidence by destroying LLC records, which necessitated the hiring of the accounting expert. For all three records violations, the court concluded that the only damages were the cost of retaining the accounting expert. The damages from the breach of contract were awarded to the LLC, not to the individual plaintiffs.

The trial court considered Plaintiffs' request for punitive damages and ruled that, under the clear and convincing standard, Plaintiffs failed to prove the elements required for punitive damages regarding Mr. Stewart's misappropriation of company funds. However, the court found that Mr. Stewart's actions in burning company records were intentional and fraudulent and awarded Plaintiffs punitive damages in the amount of $20,000.

- 9 -

It was the court's understanding that it had statutory authority to award attorney fees regarding "the document case."[9] The court requested briefing from the parties "about the permissibility of the Court to give attorney's fees under whatever provision" as to the remaining claims.

On November 7, 2023, Plaintiffs filed a "Memorandum in Support of Award For Attorneys' Fees, Costs, and Expenses." As authority for the award of attorney fees, Plaintiffs cited two provisions of the Tennessee Limited Liability Act: Tenn. Code Ann. §§ 48-230-104(b)[10] and 48-230-105.[11] Plaintiffs moved for an award of $358,213.50 in attorney fees and submitted an affidavit of D. Gil Schuette, a partner in the law firm representing Plaintiffs with an attached itemization of the legal services and the expenses associated with the case. In response, Mr. Stewart filed a Notice of Defendant's Intent to Oppose the plaintiffs' post-trial filings, including the request for attorney fees.[12]

On November 20, 2023, Mr. Stewart filed a response to Mr. Schuette's affidavit, challenging specific charges included in the affidavit as being unnecessary, unreasonable, or excessive and urging the court to strike or decline to consider the affidavit. In this response, Mr. Stewart did not challenge the statutory authority for an award of attorney fees. Plaintiffs subsequently filed the affidavit of an attorney opining upon the appropriateness of their fee request, and Mr. Stewart filed the affidavit of another attorney criticizing some of the charges asserted by Plaintiffs.

---

[9] The trial court did not expressly identify the statute from which the court drew this conclusion.

[10] Tennessee Code Annotated section 48-230-104(b) states:

> If a derivative action is successful in whole or in part, or if anything is received by the plaintiff as a result of a judgment, compromise or settlement of any such action, the court may award the plaintiff reasonable expenses, including reasonable attorneys' fees. If anything is so received by the plaintiff, the court shall make such award of the plaintiff's expenses payable out of those proceeds and direct the plaintiff to remit to the LLC the remainder thereof, and if those proceeds are insufficient to reimburse the plaintiff's reasonable expenses, the court may direct that any such award of the plaintiff's expenses or portion thereof be paid by the LLC.

[11] Tennessee Code Annotated section 48-230-105 states: "If an LLC or a manager or governor of the LLC violates a provision of chapters 201-248 of this title, a court in this state may, in an action brought by a member of the LLC, grant any equitable relief it considers just and reasonable in the circumstances and award expenses, including counsel fees and disbursements, to the member."

[12] On November 17, 2023, Mr. Stewart filed a "Rule 59.04 Motion to Alter/Amend and Rule 15.01 Motion to Amend." Though no order had been entered to memorialize the court's ruling on October 24, 2023, Mr. Stewart moved the court to "alter/amend its Order of October 24, 2023, to recognize the Defendant's statute of limitations defense, to ascertain the gravamen of each claim asserted in the First Verified Complaint . . . , and reduce any judgment issued based thereon."

The trial court entered an order awarding attorney fees on January 25, 2024. In that order, the trial court made findings, including the following:

> The issue of whether Plaintiffs' fees are awardable pursuant to Statute does not appear to be disputed. Given the facts, testimony, and evidence and findings of the Court previous hereto, the Court finds that an award of *some* of the attorneys' fees/expenses is authorized, warranted, necessary and just in this cause.

The court then analyzed the reasonableness of the requested attorney fees using the factors listed in Rule of Professional Conduct 1.5. *See* TENN. R. SUP. CT. 8, RPC § 1.5. The court found that the hourly rates charged by Plaintiffs' attorneys were excessive and that the number of different attorneys and paralegals working on the case led to some inefficiencies and an increase in fees. Based upon these and other findings, the court found that a "substantial downward deviation" of the requested attorney fees was warranted. The court concluded that an attorney fee of $185,000.00 was "an appropriate, just, and reasonable fee" and would be added to the judgment against Mr. Stewart.

On the same day, the court entered two other orders: the final judgment (with findings of fact and conclusions of law) and an order denying Mr. Stewart's Rule 59 and Rule 15 motions. As detailed above, in its final judgment, the court made an award of $372,869 in compensatory damages to the LLC on the breach of contract claim. On the breach of duty claims regarding company records, the court found that the time and fees of Plaintiffs' accounting expert were reasonable; the court awarded Plaintiffs $14,641.25 on this claim. The court awarded Plaintiffs $20,000 in punitive damages for the intentional and fraudulent destruction of company records. The court also incorporated in the judgment its attorney fee award ($185,000) and discretionary costs.

*Appellate issues*

On appeal, Mr. Stewart argues that the trial court's attorney fee award was improper because "[a]dding the fees to the judgment would only be proper under Tenn. Code Ann. § 48-230-105." In Mr. Stewart's view, this provision requires that attorney fees "must be subtracted from the damage awarded, not added to the damages awarded."

The plaintiffs insist that Mr. Stewart waived this argument by failing to make it to the trial court. *See Waters v. Farr*, 291 S.W.3d 873, 918 (Tenn. 2009) (Koch, J., concurring) ("One cardinal principle of appellate practice is that a party who fails to raise an issue in the trial court waives its right to raise that issue on appeal."). Mr. Stewart could have (but failed to) draw any distinction between the two statutory provisions prior to the trial court's award of attorney fees. However, in light of the fact that the trial court entered its order on the merits of the underlying case and its order on attorney fees on the same day, we cannot say that Mr. Stewart waived this argument.

In considering the parties' arguments regarding attorney fees, we are hampered by the lack of specificity in the trial court's final judgment and attorney fees order. Plaintiffs brought individual and derivative claims.[13] In its judgment, the trial court did not specify whether it awarded damages based upon the individual or derivative causes of action. We know that the trial court awarded the LLC, not the individual members (the Kellys), compensatory damages on the breach of contract claim. As to the other damages awards, the trial court's awards are to "the Plaintiffs," which includes both the LLC and the Kellys. In the final judgment, the trial court awarded Plaintiffs $14,641 for Mr. Stewart's breach of fiduciary duty[14] and "destruction of records." From the oral ruling (which is part of the final judgment), it appears that this award also relates to Mr. Stewart's failure to provide requested records to the Kellys as required by statute (Tenn. Code Ann. § 48-228-102). The court's punitive damages award was made to the Plaintiffs generally.

Further, looking at the trial court's attorney fees order, this Court is unable to discern what portion of the attorney fees award relates to the breach of contract claims and what portion relates to the other claims. In their request for attorney fees, Plaintiffs' attorneys divided their itemization of charges between charges for "legal services for the document request portion of this matter" ($41,787.18) and "legal services for work through trial after the document request portion had progressed to the amended complaint segment of this matter" ($321,676.67). In its order regarding attorney fees, the court analyzed the requested charges under the RPC 1.5 factors and as outlined above, found ways in which Plaintiffs' attorney fee requests were unreasonable. The court then awarded attorney fees in the total amount of $185,000 without specifying to which causes of action the reduced attorney fees related.

Having reviewed in detail the trial court's judgment, this Court is unable to discern for which causes of action and to whom (the LLC or the individual plaintiffs) some of the damages are awarded. Furthermore, the attorney fees award does not cite the authority under which the court is awarding the attorney fees and to which parties.[15] In light of the lack of clarity in the trial court's rulings on these issues, we must vacate and remand for further findings.

---

[13] Derivative claims are generally brought by an LLC member(s) on behalf of the company. *See generally* Tenn. Code Ann. § 48-230-101 (permitting an LLC member to commence a derivative action). Here, the LLC was a named plaintiff.

[14] We note that the Tennessee Limited Liability Act, which is the applicable statute here, "defines the fiduciary duty of members of a member-managed LLC as one owing to the LLC, not to individual members." *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002).

[15] We, therefore, do not reach the arguments presented by the parties on the interpretation of the two statutory provisions regarding attorney fees in derivative actions.

*Attorney fees on appeal*

Plaintiffs have also requested their attorney fees on appeal pursuant to the LLC Act and the operating agreement. The operating agreement provides: "If a Member engages in a prohibited transaction, such Member shall indemnify the Company for any costs or damages incurred by the Company as a result of the unauthorized action of such member." Prohibited transactions are defined in the operating agreement to include the performance of "any act that violates the Operating Agreement, except with the prior expressed approval of all Members." We conclude that this provision entitles the LLC to indemnification for its appellate attorney fees related to the breach of contract claims. Under the two LLC Act provisions cited by Plaintiffs, Tenn. Code Ann. § 48-230-104(b) and § 48-230-105, the court's award of attorney fees is discretionary, and we decline to exercise our discretion to award Plaintiffs any additional appellate attorney fees pursuant to these provisions.

On remand, the trial court shall determine the appropriate amount of appellate attorney fees to award to the LLC.

## CONCLUSION

The judgment of the trial court is affirmed in part, vacated in part, and remanded to the trial court for further proceedings. Costs of this appeal are assessed against the appellant, Thomas A. Stewart, for which execution may issue if necessary.


/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE